73 Cal.Rptr.3d 159 (2008)
160 Cal.App.4th 951
CITY OF SAN JOSE, Plaintiff and Appellant,
v.
OPERATING ENGINEERS LOCAL UNION NO. 3, et al., Defendants and Respondents.
No. H030272.
Court of Appeal of California, Sixth District.
March 4, 2008.
*161 Office of the City Attorney, Richard Doyle, City Attorney George Rios, Assistant City Attorney Robert Fabela, Senior Deputy City Attorney Suzanne Hutchins, Deputy City Attorney, for Appellant.
Leonard Carder, Arthur A. Krantz, Weinberg, Roger & Rosenfeld, Antonio Ruiz, Alameda, for Respondents.
Jennifer B. Henning, for Amicus curiae, California State Association of Counties and League of California Cities.
Altshuler, Berzon, Nussbaum, Rubin & Demain, Jonathan Weissglass, Linda Lye, San Francisco, for Amicus curiae, California State Council of Service Employees.
Robert Thompson, General Counsel, Robin Wesley, Tammy Samsel, for Amicus *162 curiae, Public Employment Relations Board.
Office of the County Counsel, Ann Miller Ravel, County Counsel, Nancy J. Clark, Assistant County Counsel, Lori E. Pegg, Lead Deputy County Counsel, for Amicus curiae, County of Santa Clara.
*160 McADAMS, J.
When a strike involving statutory unfair labor practice claims is threatened by public employees whose services are essential to municipal health and safety, who has jurisdiction over the dispute: the superior court or the Public Employment Relations Board? As the trial court correctly determined, the agency has exclusive initial jurisdiction. We therefore affirm the order challenged here.

INTRODUCTION
The statute at the heart of this case is the Meyers-Milias-Brown Act (MMBA), codified at Government Code sections 3500-3511.[1] The MMBA "governs collective bargaining and employer-employee relations for most California local public entities, including cities, counties, and special districts." (Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd. (2005) 35 Cal.4th 1072, 1077, 29 Cal.Rptr.3d 234, 112 P.3d 623 (Coachella Valley).) The Public Employment Relations Board (PERB) has exclusive initial jurisdiction over claimed violations of the MMBA. (Ibid.)
The labor dispute at issue here is between the City of San Jose (the City) and Operating Engineers Local No. 3 (the Union). The Union represents approximately 800 of the City's employees, including a number of individuals that the City identified as critical to the continued operation of its sanitation system and other facilities.

FACTUAL AND PROCEDURAL BACKGROUND
In 2006, the City and the Union were engaged in negotiations for a new memorandum of agreement. In April 2006, a tentative agreement was reached, but it was rejected by Union members. The old contract expired, and the Union refused to extend it. On May 30, 2006, the Union gave the City 72 hours' notice that job actions could occur any time after June 2.

Request for Injunction
The City filed a complaint for permanent injunction, preliminary injunction, and temporary restraining order, seeking to enjoin specified Union employees from engaging in a work stoppage. Those employees were identified on Exhibit A to the complaint. The City deemed their services essential to the public health and safety of its citizens.
On June 2, 2006, the City applied to the superior court for a temporary restraining order against a work stoppage by 67 of the employees identified as essential. The City asserted that the superior court was the proper forum for the requested relief. It argued that the Public Employment Relations Board does not have exclusive initial jurisdiction over the common law prohibition against health and safety strikes, that PERB lacks expertise in determining whether a strike constitutes an imminent threat to public health and safety, and that the agency's processes are not suited to protecting against such threats.

Opposition
The Union opposed the City's application for temporary restraining order. The Union argued that the court's jurisdiction *163 was preempted in favor of PERB, because the underlying conduct was arguably prohibited or arguably protected by the MMBA. Furthermore, the Union asserted, PERB has developed procedures to effectively compel remedial action, including the ability to seek injunctions when appropriate. The Union advised the court that it had filed an unfair practice charge against the City on May 31, 2006, alleging violations of the MMBA.
The Public Employment Relations Board also opposed the City's request for injunctive relief. PERB argued that the dispute came within its exclusive initial jurisdiction and that the City was required to exhaust its administrative remedies prior to seeking relief in the superior court.

Hearings
The matter first came on for hearing on June 2, 2006. With the parties' agreement, and the Union's representation that it would not strike in the interim, the court continued the matter to the following week. One reason for the continuance was to give the court the opportunity to review the briefs and the case law.
The hearing resumed on June 7, 2006. The court began by thanking the parties for agreeing to the continuance, observing that it was "in a better position to be informed on the law" than before. After entertaining oral arguments, the court announced its conclusion that the parties' dispute "falls within the exclusive initial jurisdiction of the Public Employment Relations Board." It stated: "Therefore, for the reason of lack of jurisdiction the court will take no action at this time."

Order
On June 9, 2006, the superior court entered a formal dismissal order, which reads: "The Court hereby dismisses this action without prejudice on the grounds that Plaintiff City has failed to exhaust its administrative remedies, in that Plaintiff has not first sought relief from the Public Employees Relations Board, which the Court finds to have exclusive initial jurisdiction over this matter."

Appeal
The City immediately filed a notice of appeal. It also petitioned this court for a writ of supersedeas, and we granted a stay pending final determination of this appeal.
Two amicus curiae briefs have been filed in support of the City's appeal, one submitted jointly by the California State Association of Counties and the League of California Cities and the other submitted by the County of Santa Clara.
The Union opposes the appeal. Like the City, it is supported by two amici, the Public Employment Relations Board (PERB) and the California State Council of Service Employees.
Concerning PERB, we denied its application for leave to intervene. But we granted the agency leave to appear as an amicus. Concerning the California State Council of Service Employees, we accepted its amicus brief and we also granted its request for judicial notice.

ISSUES ON APPEAL
The City contends that this dispute should be heard in superior court, both because the court has jurisdiction under the common law to enjoin public employee strikes that threaten public health and safety, and also because the City "did not allege any violations of the MMBA, which is the only basis by which PERB would have exclusive initial jurisdiction." The City further argues that the agency's remedies are inadequate in cases such as this and that exhaustion should be excused.
*164 The Union characterizes the City's contentions as contrary to law. In its view, the City's argument concerning PERB remedies ignores both precedent and the facts of this case. Furthermore, the Union asserts, the City failed to establish an exception to the agency's exclusive initial jurisdiction over this dispute excusing exhaustion.
Following oral argument in this case, we asked the parties to submit additional briefing on the question of mootness. In its response, the City acknowledged that the parties had "reached an agreement for a new contract during the course of this appeal." The Union likewise advised that it had reached agreement with the City "on a successor labor agreement, and the threatened work stoppage never occurred." Nevertheless, both parties ask us to decide the issues presented in the appeal, even if they are technically moot. According to the City, "the issues currently on appeal are of continuing public interest...." The Union agrees, adding that "this issue has the potential to arise in every California city, county, and other districts subject to the MMBA, and the issue of public sector strikes is clearly of broad public interest."

DISCUSSION
We begin our analysis with the threshold question of mootness. We then consider jurisdiction and exhaustion.

Mootness
A case is moot when the reviewing court cannot provide the parties with practical, effectual relief. (MHC Operating Limited Partnership v. City of San Jose (2003) 106 Cal.App.4th 204, 214, 130 Cal.Rptr.2d 564.) In such cases, the appeal generally should be dismissed. (Ibid.)
As both parties recognize, even if a case is technically moot, the court has inherent power to decide it where the issues presented are important and of continuing interest. (Burch v. George (1994) 7 Cal.4th 246, 253, fn. 4, 27 Cal.Rptr.2d 165, 866 P.2d 92.) That is particularly true when the issue is likely to recur yet evade review. (See, e.g., NBC Subsidiary (KNBC-TV), Inc. v. Superior Court (1999) 20 Cal.4th 1178, 1190, fn. 6, 86 Cal.Rptr.2d 778, 980 P.2d 337.)
We agree that the central issues presented herethe extent of PERB's exclusive initial jurisdiction and the need for exhaustion of administrative remedies present important legal questions of continuing public importance. We therefore exercise our discretion to decide those issues on the merits, despite the fact that the underlying dispute is technically moot.

Jurisdiction
To establish the proper framework for our analysis of the jurisdictional issues, we begin by describing the development of the relevant body of law.

I. Overview: Labor Relations in Public Employment
Starting in the 1960s, the California Legislature "enacted a series of legislative measures granting public employees, at both the state and local level, a variety of organizational and negotiating rights somewhat analogous to the rights long afforded most employees in the private sector by the federal labor relation laws of the 1930's." (Pacific Legal Foundation v. Broum (1981) 29 Cal.3d 168, 173-174, 172 Cal.Rptr. 487, 624 P.2d 1215.) These measures "established a framework for the resolution of employer-employee disputes and the avoidance of work stoppages." (Id. at p. 202, 172 Cal.Rptr. 487, 624 P.2d 1215.) Each "is part of a larger system of *165 law for the regulation of public employment relations under the initial jurisdiction of the PERB." (Coachella Valley, supra, 35 Cal.4th at p. 1089, 29 Cal.Rptr.3d 234, 112 P.3d 623.)

A. Legislative Acts

1. The MMBA and its predecessor
"In 1961, the Legislature enacted the George Brown Act [citation], which for the first time recognized the rights of state and local public employees to organize and to have their representatives meet and confer with their public agency employers over wages and working conditions." (Coachella Valley, supra, 35 Cal.4th at p. 1083, 29 Cal.Rptr.3d 234, 112 P.3d 623.)
"In 1968, the Legislature went a step further by enacting the MMBA [citation], which `authorized labor and management representatives not only to confer but to enter into written agreements for presentation to the governing body of a municipal government or other local agency.' [Citations.] Although the MMBA covered most employees of local public entities, it did not include school districts' employees." (Coachella Valley, supra, 35 Cal.4th at p. 1083, 29 Cal.Rptr.3d 234, 112 P.3d 623.) Notwithstanding some "`sketchy' provisions, the act contains strong protection for the rights of public employees to join and participate in the activities of employee organizations, and for the rights of those organizations to represent employees' interests with public agencies." (International Brotherhood of Electrical Workers v. City of Gridley (1983) 34 Cal.3d 191, 198, 193 Cal.Rptr. 518, 666 P.2d 960.) The stated purposes of the MMBA are "to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes" and "to promote the improvement of personnel management and employer-employee relations within the various public agencies in the State of California...." (§ 3500, subd. (a).)
"When the Legislature enacted the MMBA in 1968, it had not yet created the PERB, and it did not include in the MMBA any provisions expressly authorizing either administrative or judicial proceedings to enforce its provisions." (Coachella Valley, supra, 35 Cal.4th at p. 1084, 29 Cal.Rptr.3d 234, 112 P.3d 623; see International Brotherhood of Electrical Workers v. City of Gridley, supra, 34 Cal.3d at p. 197, 193 Cal.Rptr. 518, 666 P.2d 960.) Many years later, the Legislature "brought the MMBA within the PERB's jurisdiction" through legislation that was adopted in 2000 and effective in July 2001. (Coachella Valley, at p. 1085, 29 Cal.Rptr.3d 234,112 P.3d 623.)

2. Other statutes governing public employees
Moving beyond the MMBA, the Legislature enacted other labor measures in the 1970s, "covering additional categories of public agencies and their employees." (Coachella Valley, supra, 35 Cal.4th at p. 1085, 29 Cal.Rptr.3d 234, 112 P.3d 623.) In 1975, it "adopted the Educational Employment Relations Act (Gov.Code, §§ 3540-3549.3; hereafter the EERA), which governs employer-employee relations for public schools (kindergarten through high school) and community colleges." (Id. at p. 1084, 29 Cal.Rptr.3d 234, 112 P.3d 623.) "Two years later, in 1977, the Legislature enacted the State Employer-Employee Relations Act (Gov.Code, §§ 3512-3524) to govern relations between the state government and certain of its employees." (Id. at p. 1085, 29 Cal. Rptr.3d 234, 112 P.3d 623.) Originally known by its acronym SEERA, that legislation "was later renamed, and its official name is now the Ralph C. Dills Act (hereafter the Dills Act)." (Ibid.) "In 1978, the *166 Legislature enacted the Higher Education Employer-Employee Relations Act ... to govern labor relations within the University of California, the California State University, and Hastings College of the Law." (Ibid.)
The trend of bringing additional categories of public employees under the statutory umbrella has continued in the 21st century. "In 2000, the Legislature ... enacted the Trial Court Employment Protection and Governance Act ... to govern labor relations and other employment matters within the state's trial courts. [Citation.] In 2002, the Legislature enacted the Trial Court Interpreter Employment and Labor Relations Act ... to govern labor relations and employment matters for trial court interpreters. [Citation.] In 2003, the Legislature enacted the Los Angeles County Metropolitan Transit Authority Transit Employer-Employee Relations Act ... to govern labor relations for a public transit district." (Coachella Valley, supra, 35 Cal.4th at pp. 1085-1086, 29 Cal.Rptr.3d 234, 112 P.3d 623.)

B. The Public Employment Relations Board: creation and development
"The history of the PERB begins in 1975, when the Legislature adopted the Educational Employment Relations Act.... As part of this new statutory scheme, the Legislature created the Educational Employment Relations Board (EERB), `an expert, quasi-judicial administrative agency modeled after the National Labor Relations Board, to enforce the act.'" (Coachella Valley, supra, 35 Cal.4th at pp. 1084-1085, 29 Cal.Rptr.3d 234, 112 P.3d 623, quoting Pacific Legal Foundation v. Brown, supra, 29 Cal.3d at p. 177, 172 Cal.Rptr. 487, 624 P.2d 1215.) "The Legislature vested the EERB with authority to adjudicate unfair labor practice charges under the EERA." (Coachella Valley, at p. 1085, 29 Cal.Rptr.3d 234, 112 P.3d 623.)
Two years later, in 1977, the Dills Act was enacted. (See Coachella Valley, supra, 35 Cal.4th at p. 1085, 29 Cal.Rptr.3d 234,112 P.3d 623.) Although "the Legislature did not incorporate the Dills Act into the EERA," it did "expand the jurisdiction of the EERB to include adjudication of unfair practice charges under the Dills Act, and as a result the EERB was renamed the PERB." (Ibid.)
"Since 1977, the PERB's jurisdiction has continued to expand as the Legislature has enacted new employment relations laws covering additional categories of public agencies and their employees." (Coachella Valley, supra, 35 Cal.4th at p. 1085, 29 Cal.Rptr.3d 234, 112 P.3d 623.) As each new public employment statute was added, "the Legislature followed the pattern set by the Dills Act. It did not incorporate the new laws' substantive provisions into the EERA.... But the Legislature expanded the PERB's jurisdiction to cover unfair labor practices alleged under each of these labor relations laws." (Id. at p. 1086, 29 Cal.Rptr.3d 234,112 P.3d 623.)
"PERB is an expert, quasi-judicial administrative agency." (City and County of San Francisco v. International Union of Operating Engineers, Local 39 (2007) 151 Cal.App.4th 938, 943, 60 Cal.Rptr.3d 516 (San Francisco).) It is "independent of any state agency...." (§ 3541, subd. (a).) Its five members are "appointed by the Governor by and with the advice and consent of the Senate." (Ibid.)
The Public Employment Relations Board "is authorized to resolve disputes and enforce the statutory duties and rights of public employees" subject to the various public employment statutes, including the *167 MMBA. (3 Witkin, Summary of Cal. Law (10th ed. 2005.) Agency & Employment, § 568, p. 679.) "One of PERB's primary functions is to investigate and adjudicate charges of unfair labor practices." (San Francisco, supra, 151 Cal.App.4th at p. 943, 60 Cal.Rptr.3d 516.) "The initial determination as to whether the charge of unfair practice is justified and, if so, the appropriate remedy" is "a matter within the exclusive jurisdiction of the board." (§ 3509, subd. (b).)
As the California Supreme Court has long recognized, "PERB has a specialized and focused task`to protect both employees and the state employer from violations of the organizational and collective bargaining rights guaranteed by'" the statutes that it administers. (Banning Teachers Assn. v. Public Employment Relations Bd. (1988) 44 Cal.3d 799, 804, 244 Cal.Rptr. 671, 750 P.2d 313, quoting Pacific Legal Foundation v. Brown, supra, 29 Cal.3d at p. 198, 172 Cal.Rptr. 487, 624 P.2d 1215.) "As such, PERB is `one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect.'" (Banning Teachers Assn., at p. 804, 244 Cal.Rptr. 671, 750 P.2d 313, quoting Universal Camera Corp. v. Labor Bd. (1951) 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456.)
Where PERB has exclusive initial jurisdiction, "the courts have only appellate, as opposed to original, jurisdiction to review PERB's decisions." (International Federation of Prof. & Technical Engineers v. Bunch (1995) 40 Cal.App.4th 670, 677, 46 Cal.Rptr.2d 813 (International Federation); see § 3509.5.)

C. Case Law
While these statutory and administrative developments were unfolding, case law was evolving as well. Three California Supreme Court cases are particularly relevant here, because they involve public employee strikes: (1) San Diego Teachers Assn. v. Superior Court (1979) 24 Cal.3d 1, 154 Cal.Rptr. 893, 593 P.2d 838 (San Diego); (2) El Rancho Unified School Dist. v. National Education Assn. (1983) 33 Cal.3d 946, 192 Cal.Rptr. 123, 663 P.2d 893 (El Rancho); and (3) County Sanitation Dist. No. 2 v. Los Angeles County Employees' Assn. (1985) 38 Cal.3d 564, 214 Cal.Rptr. 424, 699 P.2d 835 (County Sanitation).

1. San Diego
In the San Diego case, a teachers' union and its president sought annulment of contempt orders issued against them for conducting a strike in violation of a court injunction. (San Diego, supra, 24 Cal.3d at p. 4, 154 Cal.Rptr. 893, 593 P.2d 838.) At issue was whether "the injunctive remedies were improper because of the district's failure to exhaust its administrative remedies under the EERA." (Id. at p. 7, 154 Cal.Rptr. 893, 593 P.2d 838.)
Addressing the exhaustion question, the San Diego court identified three main issues: "(1) Could PERB properly determine that the strike was an unfair practice under the EERA? (2) If it made that determination could it furnish relief equivalent to that which would be provided by a trial court? (3) Did the Legislature intend that PERB would have exclusive initial jurisdiction over remedies against strikes that it properly could find were unfair practices?" (San Diego, supra, 24 Cal.3d at p. 7, 154 Cal.Rptr. 893, 593 P.2d 838.)
The high court answered each question in the affirmative. First, it held, a strike could be an unfair practice under the EERA. (San Diego, supra, 24 Cal.3d at *168 pp. 8-9, 154 Cal.Rptr. 893, 593 P.2d 838.) Next, the court concluded, the school district was required to exhaust its administrative remedy under the EERA, since "PERB could furnish relief equivalent to that which could be provided judicially." (Id. at p. 9, 154 Cal.Rptr. 893, 593 P.2d 838.) Based on those determinations, the court also answered the third question affirmatively, finding that PERB had exclusive initial jurisdiction over the teachers' strike. (Id. at p. 12, 154 Cal.Rptr. 893, 593 P.2d 838.)
Because the school district had failed to exhaust its remedies with PERB, the high court annulled the contempt orders arising out of the strike injunction. (San Diego, supra, 24 Cal.3d at p. 14, 154 Cal.Rptr. 893, 593 P.2d 838.)

2. El Rancho
Four years after its decision in San Diego, the California Supreme Court took up the El Rancho case. (El Rancho, supra, 33 Cal.3d 946, 192 Cal.Rptr. 123, 663 P.2d 893.) The court summarized its earlier decision as holding "that PERB has exclusive jurisdiction over actions to enjoin strikes by public school employee organizations recognized or certified as exclusive representatives under EERA." (Id. at pp. 952-953, 192 Cal.Rptr. 123, 663 P.2d 893, citing San Diego, supra, 24 Cal.3d at p. 14, 154 Cal.Rptr. 893, 593 P.2d 838.) In El Rancho, the court was presented not with an injunction but with an action for tort damages arising out of a past school strike. (El Rancho, at p. 952, 192 Cal.Rptr. 123, 663 P.2d 893.) Despite the differences in posture between the two cases, the court used its earlier decision as "a starting point for analysis." (Id. at p. 953, 192 Cal.Rptr. 123, 663 P.2d 893.)
The court described the federal preemption doctrine and its relevance, noting: "San Diego Teachers embraced the preemption doctrine developed by the federal courts under the National .Labor Relations Act...." (El Rancho, supra, 33 Cal.3d. at p. 953, 192 Cal.Rptr. 123, 663 P.2d 893, citing San Diego, supra, 24 Cal.3d at p. 12, 154 Cal.Rptr. 893, 593 P.2d 838.) Following that lead, the El Rancho court also looked to "those principles" in deciding the issue before it. (El Rancho, at p. 953, 192 Cal.Rptr. 123, 663 P.2d 893.) "Stated broadly," the court said, "under the federal preemption doctrine, the National Labor Relations Board (NLRB) is held to have exclusive jurisdiction over activities arguably protected or prohibited by the NLRA." (Ibid.) The El Rancho court discussed United States Supreme Court precedent, which explains that "the aim of this rule is to avoid conflict `in its broadest sense' in the regulation of labor-management relations, `conflict with [the] complex and interrelated federal scheme of law, remedy and administration.'" (Ibid.) California has a similar system; as with federal law, "EERA establishes a comprehensive scheme of law, remedy and administration through PERB." (Id. at p. 960, 192 Cal.Rptr. 123, 663 P.2d 893.)
Applying the federal preemption doctrine, the El Rancho court considered both branches of the doctrine: arguably prohibited and arguably protected. The court first addressed the question of whether the past strike was "arguably prohibited" as "an unfair practice under EERA." (El Rancho, supra, 33 Cal.3d. at p. 954, 192 Cal.Rptr. 123, 663 P.2d 893.) Concerning this first prong, the court observed, "strikes are an unfair practice under EERA only if they involve a violation of the act's provisions." (Id. at p. 957, 192 Cal.Rptr. 123, 663 P.2d 893.) Even constrained by that limitation, the court rejected the school district's contention "that the issues which it could present in court are broader than the issues it could present *169 to PERB." (Ibid.) The court thus concluded that "the arguably prohibited branch of the preemption doctrine" applied. (Ibid.) Turning to the second prong, the court agreed with the unions that the strike activity was "arguably protected" under the EERA. (Id. at p. 959, 192 Cal. Rptr. 123, 663 P.2d 893.) Based on this analysis, the high court held that the superior court lacked jurisdiction either to enjoin the strike or to award damages arising out of it. (Id. at p. 960, 192 Cal.Rptr. 123, 663 P.2d 893.) In the court's words: "Having concluded that the Unions' strike was arguably protected or prohibited under EERA and that application of the preemption doctrine is fully justified under either prong, it follows that the superior court would not have had jurisdiction to enjoin the strike." (Ibid.)

3. County Sanitation
The County Sanitation case, decided in 1985, involved a strike by sanitation workers, who were governed by the MMBA. (County Sanitation, supra, 38 Cal.3d at p. 568, 214 Cal.Rptr. 424, 699 P.2d 835.) There, a plurality of the California Supreme Court squarely addressed the unresolved issue of the legality of public employee strikes. (Id. at pp. 570-571, 214 Cal.Rptr. 424, 699 P.2d 835.) Prior to this decision, a long line of cases had deemed such strikes unlawful. (Id. at p. 570, fn. 10, 214 Cal.Rptr. 424, 699 P.2d 835; see id. at p. 610, 214 Cal.Rptr. 424, 699 P.2d 835 [dis. opn. of Lucas].) Rejecting that line of authority, the court concluded that "the common law prohibition against all public employee strikes is no longer supportable." (Id. at p. 567, 214 Cal.Rptr. 424, 699 P.2d 835; see id. at p. 585, 214 Cal. Rptr. 424, 699 P.2d 835.)
The court identified and refuted four categories of arguments offered as justifications for the common law rule against public employee strikes. (County Sanitation, supra, 38 Cal.3d at pp. 574-581, 214 Cal.Rptr. 424, 699 P.2d 835.) Most relevant here is the fourth argument, which posits that "interruption of government services is unacceptable because they are essential." (Id. at p. 579, 214 Cal.Rptr. 424, 699 P.2d 835.) The court questioned that notion, observing that the law tolerates strikes by private employees in many of the same areas in which government is engaged, such as transportation, health, education, and utilities. "Indeed," the court said, "strikes by private workers often pose a more serious threat to the public interest than would many of those which involve public employees." (Id. at p. 580, 214 Cal.Rptr. 424, 699 P.2d 835.) The court did find "partial merit" in the argument, though. (Grodin, Author's Comments to Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts (1999) 50 Hastings L.J. 761, 768.)
The court acknowledged "that there are certain `essential' public services, the disruption of which would seriously threaten the public health or safety." (County Sanitation, supra, 38 Cal.3d at p. 580, 214 Cal.Rptr. 424, 699 P.2d 835.) "The Legislature has already prohibited strikes by firefighters under any circumstance. It may conclude that other categories of public employees perform such essential services that a strike would invariably result in imminent danger to public health and safety, and must therefore be prohibited." (Id. at p. 585, 214 Cal.Rptr. 424, 699 P.2d 835, fn. omitted.) "While the Legislature may enact such specific restrictions, the courts must proceed on a case-by-case basis." (Ibid.)
As a standard to guide these determinations, the court stated that "strikes by public employees are not unlawful at common law unless or until it is clearly demonstrated *170 that such a strike creates a substantial and imminent threat to the health or safety of the public." (County Sanitation, supra, 38 Cal.3d at p. 586, 214 Cal. Rptr. 424, 699 P.2d 835.) "This standard allows exceptions in certain essential areas of public employment (e.g., the prohibition against firefighters and law enforcement personnel) and also requires the courts to determine on a case-by-case basis whether the public interest overrides the basic right to strike." (Ibid.)
Guided by the foregoing principles and authority, we now address the specific contentions raised here. As the City correctly observes, this appeal raises questions of law, which we review de novo. (See, e.g., Robbins v. Foothill Nissan (1994) 22 Cal. App.4th 1769, 1773-1774, 28 Cal.Rptr.2d 190 [dismissal for lack of subject matter jurisdiction].)

II. Analysis
To warrant PERB jurisdiction, the conduct at issue must implicate the MMBA. (See El Rancho, supra, 33 Cal.3d. at p. 957, 192 Cal.Rptr. 123, 663 P.2d 893.) A necessary first step is identifying that conduct.

A. What conduct is at issue here?
In determining whether the challenged activity implicates the statute, we disregard the parties' labels. A party "may not, through artful pleading, evade PERB's exclusive jurisdiction." (San Francisco, supra, 151 Cal.App.4th at p. 945, 60 Cal.Rptr.3d 516 [rejecting the city's argument that "PERB does not have jurisdiction because its complaint only alleges a violation of the city charter, not ... any unfair practice under the MMBA"].) "It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern." (Motor Coach Employees v. Lockridge (1971) 403 U.S. 274, 292, 91 S.Ct. 1909, 29 L.Ed.2d 473; accord, Fresno Unified School Dist. v. National Education Assn. (1981) 125 Cal.App.3d 259, 269,177 Cal.Rptr. 888 (Fresno).) In other words, "what matters is whether the underlying conduct on which the suit is basedhowever described in the complaintmay fall within PERB's exclusive jurisdiction." (El Rancho, supra, 33 Cal.3d at p. 954, fn. 13, 192 Cal.Rptr. 123, 663 P.2d 893.)
For the same reasons, a party's forum selection is not determinative. (See San Francisco, supra, 151 Cal.App.4th at p. 944, 60 Cal.Rptr.3d 516 [rejecting the city's contention that PERB "has no jurisdiction over complaints that are filed in the superior court"]; Public Employment Relations Bd. v. Modesto City Schools Dist. (1982) 136 Cal.App.3d 881, 890, 186 Cal. Rptr. 634 (Modesto) [fact that district filed "unfair practice claims did not confer jurisdiction upon PERB"].) Thus, neither the City's selection of the superior court as the forum for its complaint nor the Union's choice to file a charge with PERB influences the analysis.
Moreover, "we must construe the activity broadly in order to provide `exclusive jurisdiction over activities arguably protected or prohibited...."' (California Teachers' Association v. Livingston Union School District (1990) 219 Cal.App.3d 1503, 1511, 269 Cal.Rptr. 160, quoting El Rancho, supra, 33 Cal.3d at p. 953, 192 Cal. Rptr. 123, 663 P.2d 893.)
Here, the City's complaint asserted two types of conduct that it sought to enjoin. First, it alleged, Union members "intend to picket outside of certain City facilities, the operation of which are critical to the public health and safety," with the result that the delivery of "critically necessary parts [and] supplies" may be disrupted. *171 Second, the City asserted, essential employees "will engage in work stoppage" that "will hinder, delay and interfere with the City's efforts to provide essential services, the disruption of which seriously threatens the public health or safety."
For its part, the Union's unfair labor practice charge with PERB asserted that the City "interfered with workers' rights to participate in strikes by threatening to file an application for an order to prevent city employees that are members of the Union from engaging in a strike." Based on that conduct, the Union charged the City with violating both the MMBA (§§ 3502, 3506) and PERB regulations (Cal.Code of Regs., tit. 8, § 32603).
In essence, then, the City complains about threatened strike activity, while the Union complains about interference with that activity. (Cf. El Rancho, supra, 33 Cal.3d at p. 954, 192 Cal.Rptr. 123, 663 P.2d 893 ["conduct complained of ... is, of course, the Unions' strike"].)

B. Does the challenged conduct implicate the MMBA?
The MMBA "does not directly address the question of strikes." (County Sanitation, supra, 38 Cal.3d at p. 571, 214 Cal. Rptr. 424, 699 P.2d 835.) The MMBA thus "neither denies nor grants local employees the right to strike." (Id. at p. 572, 214 Cal.Rptr. 424, 699 P.2d 835.) "The Legislature ... intentionally avoided the inclusion of any provision which could be construed as either a blanket grant or prohibition of a right to strike, thus leaving the issue shrouded in ambiguity." (Id. at p. 573, 214 Cal.Rptr. 424, 699 P.2d 835.) In the opinion of a renowned labor law commentator: "The MMBA ... was silent on the right to strike, most likely because the Legislature found that issue politically too hot to handle." (Grodin, Author's Comments to Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts, supra, 50 Hastings L.J. at pp. 767-768.) Despite its silence, "the Legislature effectively removed many of the underpinnings of the common law per se ban against public employee strikes. While the MMBA does not directly address the issue of such strikes, its implications regarding the traditional common law prohibition are significant." (County Sanitation, at p. 576, 214 Cal.Rptr. 424, 699 P.2d 835.)
Absent explicit statutory guidance concerning strikes, the question is whether the MMBA arguably prohibits or arguably protects that conduct. (See El Rancho, supra, 33 Cal.3d at pp. 957, 959, 192 Cal. Rptr. 123, 663 P.2d 893 [under EERA, strike arguably was both prohibited and protected].) If the act does either or both, PERB nominally has exclusive initial jurisdiction. (Id. at p. 960, 192 Cal.Rptr. 123, 663 P.2d 893.)

1. Arguably prohibited activity
Here, the City contends that the threatened strike is illegal because it is prohibited at common law.
An illegal strike is arguably prohibited as an unfair labor practice under the MMBA, just as it is under the EERA. (See San Diego, supra, 24 Cal.3d at p. 8, 154 Cal.Rptr. 893, 593 P.2d 838.) As explained in San Diego: "By engaging in a strike the [union] may have committed at least two of the unfair practices forbidden an employee organization that is recognized as exclusive representative: (1) failure to negotiate in good faith (§ 3543.6, subd. (c)), and (2) refusal to participate in the impasse procedure (§ 3543.6, subd. (d))." (Ibid.) Similarly, in El Rancho. "the strike arguably could have involved a violation of section 3543.6, subdivision (b). This section makes it unlawful for a union `to interfere with, restrain, or coerce employees because *172 of their exercise of rights guaranteed them by [EERA],' including their rights to refuse to participate in union activity and to represent themselves individually (§ 3543)." (El Rancho, supra, 33 Cal.3d at p. 954, 192 Cal.Rptr. 123, 663 P.2d 893.) Additionally, "the strike arguably could have violated section 3543.6, subdivision (a). That section makes it unlawful for an employee organization to '[c]ause or attempt to cause a public school employer to violate Section 3543.5.' Subdivision (d) of the latter section, in turn, forbids a public school employer from `contribut[ing] financial or other support' to a union." (Id. at p. 955, 192 Cal.Rptr. 123, 663 P.2d 893.)
As the City points out, specific statutory provisions were at issue in those two cases. But that observation rests on the "erroneous premise that PERB is limited to investigating only charges which are defined as `unlawful' under [the statute]." (Leek v. Washington Unified School Dist. (1981) 124 Cal.App.3d 43, 48, 177 Cal.Rptr. 196 [discussing EERA].) "The Legislature has further vested PERB with authority to investigate other alleged violations of the [statute] and to make determinations with respect to such alleged violations." (Ibid.) "The statute is not as narrow as the City suggests." (San Francisco, supra, 151 Cal.App.4th at p. 944, 60 Cal.Rptr.3d 516.)
We acknowledge that the activity at issue must be tethered to the MMBA. But this is not a case, like some cited by the City, where the underlying conduct implicates an entirely different statute, such as the Education Code. (See, e.g., California Teachers' Association v. Livingston Union School District, supra, 219 Cal.App.3d 1503, 269 Cal.Rptr. 160; Wygant v. Victor Valley Joint Union High School Dist. (1985) 168 Cal.App.3d 319, 214 Cal.Rptr. 205.) "Mandatory provisions of the Education Code are outside the purview of the board." (California Teachers' Association v. Livingston Union School District, at p. 1510, 269 Cal.Rptr. 160.) "Conversely, where there is any claim which `arguably" constitutes an unfair labor practice, the courts have deferred to the administrative tribunal." (Ibid.) The issue is "whether the genesis of the disagreement here was an arguable unfair labor practice or was rooted in an arguable violation of the [statute]." (Ibid.) Here, we conclude, it was. Despite its label as a common law claim, the underlying activityan allegedly illegal strikemay run afoul of the MMBA. The "arguably prohibited" branch of the preemption doctrine thus is satisfied.

2. Arguably protected activity
The "arguably protected" prong presents the opposite side of the coin.
As explained above, the landmark 1985 plurality decision in County Sanitation recognized public employees' general right to strike. (County Sanitation, supra, 38 Cal.3d at p. 567, 214 Cal.Rptr. 424, 699 P.2d 835.) But even before that decision, when the legality of public employee strikes was still an open question, the El Rancho court concluded that the EERA might protect a strike called in response to an employer's unfair labor practices. (El Rancho, supra, 33 Cal.3d at p. 958, 192 Cal.Rptr. 123, 663 P.2d 893.) Under such circumstances, the court held, "the strike may constitute `arguably protected' activity." (Id. at p. 959, 192 Cal.Rptr. 123, 663 P.2d 893.)
Here, the Union's conduct is arguably protected because public employees covered by the MMBA enjoy a general right to strike. (County Sanitation, supra, 38 Cal.3d at p. 567, 214 Cal.Rptr. 424, 699 P.2d 835.) "The right to form and be represented by unions is a fundamental right of American workers that has been extended to public employees through constitutional *173 adjudication as well as by statute; in this case, it is specifically mandated by the provisions of the MMBA itself." (Id. at pp. 587-588, 214 Cal.Rptr. 424, 699 P.2d 835, fn. omitted.) But "the right to unionize means little unless it is accorded some degree of protection regarding its principal aimeffective collective bargaining. For such bargaining to be meaningful, employee groups must maintain the ability to apply pressure or at least threaten its application. A creditable right to strike is one means of doing so." (Id. at p. 588, 214 Cal.Rptr. 424, 699 P.2d 835.) And regardless of whether the MMBA is the source of the general right to strike, the statute's "implications" concerning that right "are significant." (Id. at p. 576, 214 Cal.Rptr. 424, 699 P.2d 835.) The threatened strike activity thus is arguably protected under the MMBA.

C. Is there an exception to PERB jurisdiction where "essential" public employees are involved?
Resisting PERB jurisdiction, the City argues that its complaint does not implicate the MMBA but is instead premised on the common law prohibition against strikes by safety-sensitive employees.
We disagree. First, as just discussed, the City's complaint does implicate the MMBA, since it involves conduct that the statute arguably prohibits or protects. Moreover, as we now explain, absent an explicit statutory prohibition against strikes by particular employees, the question of the legality of such strikes is entrusted to PERB in the first instance.

1. Limitations on essential employees' right to strike
As discussed above, the County Sanitation case recognizes "that there are certain `essential' public services, the disruption of which would seriously threaten the public health or safety." (County Sanitation, supra, 38 Cal.3d at p. 580, 214 Cal. Rptr. 424, 699 P.2d 835.) In the absence of legislative guidance, decisions about the permissibility of strikes by public employees who perform such essential services must be made "on a case-by-case basis." (Id. at p. 585, 214 Cal.Rptr. 424, 699 P.2d 835.)

2. Forum
In 1985, when County Sanitation was decided, the courts were charged with those individualized decisions. (See County Sanitation, supra, 38 Cal.3d at p. 580, 214 Cal.Rptr. 424, 699 P.2d 835.) But with the statutory changes that became effective in 2001, "what the Legislature did was to remove from the courts their initial jurisdiction over MMBA unfair practice charges." (Coachella Valley, supra, 35 Cal.4th at p. 1089, 29 Cal.Rptr.3d 234, 112 P.3d 623.) As explained in Coachella Valley, the Legislature thereby changed "the forumvesting an administrative agency (the PERB) rather than the courts with initial jurisdiction over MMBA charges...." (Ibid.) The Coachella Valley case involved a statute of limitations issue, but we understand that legislative transformation to have broader implications. The Coachella Valley court itself described it as a "fundamental change." (Id. at p. 1077, 29 Cal.Rptr.3d 234, 112 P.3d 623.)
By vesting the agency with exclusive initial jurisdiction over the MMBA, we conclude, the Legislature entrusted PERB with determining the permissibility of strikes by essential public employees that implicate the MMBA. None of the City's arguments persuades us to the contrary.

3. Policy considerations
Important policy considerations underpin the grant of exclusive initial jurisdiction to PERB. "The decision to give exclusive *174 initial jurisdiction to PERB enables it to `perform its mandated duty to effectuate and implement the purposes and policies of the [statute]....'" (International Federation, supra, 40 Cal.App.4th at p. 676, 46 Cal.Rptr.2d 813 [discussing EERA].) Acknowledging the agency's jurisdiction helps "promote the Legislature's purpose in creating an expert administrative body whose responsibility it is to develop and apply a comprehensive, consistent scheme regulating public employer-employee relations." (Link v. Antioch Unified School Dist. (1983) 142 Cal.App.3d 765, 769, 191 Cal.Rptr. 264; accord, International Federation, at p. 677, 46 Cal.Rptr.2d 813.) Deference to the agency's exclusive initial jurisdiction serves "to help bring expertise and uniformity to the delicate task of stabilizing labor relations." (San Diego, supra, 24 Cal.3d at p. 12, 154 Cal.Rptr. 893, 593 P.2d 838.)
In light of these strong policy implications, a controversy "raising primarily legal claims does not remove the necessity for following the prescribed administrative remedy." (International Federation, supra, 40 Cal.App.4th at p. 676, 46 Cal. Rptr.2d 813.) Even "allegations of constitutional violations do not warrant judicial intervention prior to a final determination by PERB." (Id. at p. 677, 46 Cal.Rptr.2d 813.)
The same principle applies to the City's invocation of the common law. The Legislature has established a comprehensive scheme "for the regulation of public employment relations under the initial jurisdiction of the PERB." (Coachella Valley, supra, 35 Cal.4th at p. 1089, 29 Cal. Rptr.3d 234, 112 P.3d 623.) The expansive common law exception posited here would disrupt that scheme. The activity that the City would exempt from agency jurisdiction "goes to the essence of labor lawthe right to strike: the very fabric of the [statute] could be destroyed if such suits could be maintained." (Fresno, supra, 125 Cal.App.3d at p. 268, 177 Cal.Rptr. 888 [discussing the NLRA].)

4. Expertise
Our conclusion is further bolstered when PERB's expertise is considered. The agency brings "an informed and coherent basis for stabilizing labor relations conflict and for equitably and delicately structuring the balance of power among competing forces so as to further the common good." (Motor Coach Employees v. Lockridge, supra, 403 U.S. at p. 286, 91 S.Ct. 1909 fn. omitted [NLRB]; accord, Modesto, supra, 136 Cal.App.3d at p. 893, 186 Cal.Rptr. 634.)
By contrast, the courts are not well suited to the task. "A court enjoining a strike on the basis of (1) a rule that public employee strikes are illegal, and (2) harm resulting from the withholding of teachers' services cannot with expertise tailor its remedy to implement the broader objectives entrusted to PERB." (San Diego, supra, 24 Cal.3d at p. 13, 154 Cal.Rptr. 893, 593 P.2d 838.) That is true even where the court is "competent, thorough, and informed." (Modesto, supra, 136 Cal. App.3d at p. 893, 186 Cal.Rptr. 634.) When it comes to strike-related disputes, "the courts are poor forums for the resolution of such issues." (County Sanitation, supra, 38 Cal.3d at p. 613, 214 Cal.Rptr. 424, 699 P.2d 835 [dis. opn. of Lucas, J.].)
Nor are we persuaded to a different view by the claim that PERB lacks expertise concerning essential municipal functions. According to the City, "PERB's expertise over labor relations gives it no upper hand in determining whether an engineer's absence is likely to create a sewage spill which would threaten the public health and safety."
*175 We question the premise underlying the City's contention. The City focuses narrowly on job function, which is only one factor in assessing the risk of public harm. Certainly, as County Sanitation acknowledges, "if particular jobs performed by striking sanitation or other public employees require unique skills and training, it is conceivable that a public agency might be unable to find adequate replacements." (County Sanitation at p. 586, fn. 35, 214 Cal.Rptr. 424, 699 P.2d 835.) But as that case also recognizes, with "sanitation strikes, it is often the length of the strike which will ultimately require issuance of an injunction." (Ibid.) And even with respect to job functions, similarities likely exist in the provision of essential municipal services, particularly in areas subject to state law, such as child protective services. (See, e.g., Welf. & Inst.Code, § 300 et seq.) At least as to those areas, PERB's statewide perspective offers an obvious advantage.
More fundamentally, to reiterate a point made above, it does not "serve public policy to have numerous superior courts throughout the state interpreting and implementing statewide labor policy inevitably with conflicting results. One of the basic purposes for the doctrine of preemption is to bring expertise and uniformity to the task of stabilizing labor relations." (Modesto, supra, 136 Cal.App.3d at p. 895, 186 Cal.Rptr. 634.)

5. Remedies
The City also challenges the adequacy of the available administrative remedies, saying: "PERB is incapable of providing the kind of immediate relief that the City requires in this case."
We reject that challenge. As explained in the San Diego case, the issue is whether PERB can furnish relief equivalent to that available in court. (San Diego, supra, 24 Cal.3d at p. 9, 154 Cal.Rptr. 893, 593 P.2d 838.) Here, we conclude, it can.
First, as a practical matter, "PERB possesses `broad' remedial powers enabling it `to take action and make determinations as are necessary to effectuate the policies of the statutes it administers." (International Federation, supra, 40 Cal.App.4th at p. 679, 46 Cal.Rptr.2d 813.) As has been said of a teachers' strike, it "does not present insurmountable relief problems, PERB having broad powers, including the right to seek injunctive relief on the request of a party to a complaint." (Fresno, supra, 125 Cal.App.3d at p. 271, 177 Cal.Rptr. 888.) The same can be said of threatened work stoppages by other essential public employees. With respect to the City's concern for celerity, the facts of this case demonstrate the agency's ability to act promptly. Here, the City was given 72 hours' notice of the possibility of a strike. Instead of seeking administrative relief, the City went directly to courtthree days later. By then, PERB had already filed papers with the court. Moving beyond the facts before us, and reviewing the agency's processes, we find nothing that dictates a different conclusion. (See Cal.Code of Regs., tit. 8, §§ 32450-32465.)
Moreover, PERB has the same interest in public safety as the City. In San Diego, our state's high court explicitly rejected the notion that there is "a disparity between public and PERB interests." (San Diego, supra, 24 Cal.3d at p. 11, 154 Cal. Rptr. 893, 593 P.2d 838.) At issue there was threatened disruption of educational services. As the court observed: "The public interest is to minimize interruptions of educational services." (Ibid.) "PERB's responsibility for administering the [statute] requires that it use its power to seek judicial relief in ways that will further the public interest in maintaining the continuity and quality of educational services." *176 (Ibid.) The agency has the same responsibility to the public with respect to municipal services. But in each case, the determination of how best to avoid public harm is left to the agency. "PERB may conclude in a particular case that a restraining order or injunction would not hasten the end of a strike ... and, on the contrary, would impair the success of the statutorily mandated negotiations between union and employer." (Id. at p. 13, 154 Cal.Rptr. 893, 593 P.2d 838.) Decisions about which remedies to pursue have been entrusted to the agency's discretion, which is to be exercised in the public interest.
Ultimately, resolution of the remedies question brings us full-circle to policy considerations again. "In delimiting the areas of conduct which are within PERB's exclusive jurisdiction, the courts must necessarily be concerned with avoiding conflict not only in the substantive rules of law to be applied, but also in remedies and administration, if state policy is to be unhampered." (El Rancho, supra, 33 Cal.3d at p. 960, 192 Cal.Rptr. 123, 663 P.2d 893.) A court "cannot with expertise tailor its remedy to implement the broader objectives entrusted to PERB." (San Diego, supra, 24 Cal.3d at p. 13, 154 Cal.Rptr. 893, 593 P.2d 838.) The rule requiring deference to the agency "must stand even against the argument that to require PERB procedures to be commenced and PERB to seek injunctive relief might cause irreparable injury should PERB decide against seeking court injunctive relief." (Fresno, supra, 125 Cal.App.3d at p. 271, 177 Cal. Rptr. 888.)

6. Local concern doctrine
Finally, contrary to the City's contention in its reply brief, this is not a proper case for application of the local concern doctrine.
"Two factors are considered relevant to application of the local concern exception to the arguably prohibited branch of the preemption doctrine. First, does there exist a `significant state interest in protecting the citizen from the challenged conduct.' Second, despite the occurrence of the challenged conduct in the course of a labor dispute and the possibility of filing an unfair labor charge, does the exercise of state jurisdiction over the tort claim entail little risk of interference with the regulatory jurisdiction of the administrative agency." (Pittsburg Unified School Dist. v. California School Employees Assn. (1985) 166 Cal.App.3d 875, 885, 213 Cal.Rptr. 34 (Pittsburg), quoting Sears, Roebuck & Co. v. Carpenters (1978) 436 U.S. 180, 196, 98 S.Ct. 1745, 56 L.Ed.2d 209.)
Neither of those factors applies here. First, this is not a case in which the interests of a particular private citizen are threatened. (Cf. Kaplan's Fruit & Produce Co., Inc. v. Superior Court (1979) 26 Cal.3d 60, 71, 160 Cal.Rptr. 745, 603 P.2d 1341 ["preemption of `arguably protected' activity ... does not preclude superior court injunctions limited to restraints upon obstructions to access" to private property].) Second, excising strike activity from PERB's jurisdiction would risk substantial "interference with the regulatory jurisdiction of the administrative agency." (Pittsburg, supra, 166 Cal.App.3d at p. 885, 213 Cal.Rptr. 34.) As explained above, the City's complaint in this case "goes to the essence of labor law" and thus to the very heart of the agency's jurisdiction. (Fresno, supra, 125 Cal.App.3d at p. 268, 177 Cal.Rptr. 888.)

Exhaustion

I. Legal Principles
"In general, a party must exhaust administrative remedies before resorting to the courts." (Coachella Valley, *177 supra, 35 Cal.4th at p. 1080, 29 Cal. Rptr.3d 234, 112 P.3d 623.) But that general rule "is subject to exceptions." (Ibid.) Futility is one exception. (Id. at pp. 1080-1081, 29 Cal.Rptr.3d 234, 112 P.3d 623.) Another exception, which the City invokes here, applies "when a party claims that 'the agency lacks authority, statutory or otherwise, to resolve the underlying dispute between the parties.'" (Id. at pp. 1081-1082, 29 Cal.Rptr.3d 234, 112 P.3d 623.)
As the California Supreme Court recently explained in the Coachella Valley case: "In deciding whether to entertain a claim that an agency lacks jurisdiction before the agency proceedings have run their course, a court considers three factors: the injury or burden that exhaustion will impose, the strength of the legal argument that the agency lacks jurisdiction, and the extent to which administrative expertise may aid in resolving the jurisdictional issue." (Coachella Valley, supra, 35 Cal.4th at p. 1082, 29 Cal.Rptr.3d 234, 112 P.3d 623.)

II. Analysis
Applying the three Coachella Valley factors to this case, we find no basis for excusing exhaustion here.

A. Injury
The City argues that requiring exhaustion would impose substantial public injury. In support of that argument, the City cites Department of Personnel Administration v. Superior Court (1992) 5 Cal.App.4th 155, 6 Cal.Rptr.2d 714. The City's reliance on that case is misplaced.
When Department of Personnel Administration was decided, "California faced an unprecedented budgetary crisis at the outset of fiscal year 1991-1992, with expenditures projected to exceed revenues by more than $14 billion." (Department of Personnel Administration v. Superior Court, supra, 5 Cal.App.4th at p. 163, 6 Cal.Rptr.2d 714.) Against that backdrop, "negotiations continued for new collective bargaining agreements between petitioner Department of Personnel Administration (DPA) and various unions representing state employees." (Ibid.) When an impasse was reached, two unions (later joined by others) petitioned for a writ of mandate prohibiting DPA from unilaterally reducing members' wages or modifying their health care benefits. (Id. at p. 164, 6 Cal.Rptr.2d 714.) Siding with the unions, the trial court issued a writ of mandate. (Id. at p. 165, 6 Cal.Rptr.2d 714.) DPA sought extraordinary relief from the Court of Appeal. (Ibid.) As that court explained, two "interrelated" exceptions applied: futility and irreparable harm. (Id. at p. 171, 6 Cal.Rptr.2d 714.) The court thus excused exhaustion "because of the potential for irreparable injury and because filing with PERB would have been futile under the circumstances." (Id. at p. 166, 6 Cal. Rptr.2d 714.) As to the first point, the court observed: "The irreparable injury exception has been rarely applied." (Id. at p. 170, 6 Cal.Rptr.2d 714.) But the court nevertheless felt compelled to apply the exception there: "Because of the unprecedented nature of the fiscal crisis faced by the state, the urgent need for resolution of these issues prior to the end of the year, and the great potential for irreparable harm in the nature of increased layoffs of state employees, we believe the failure of the unions to exhaust their administrative remedy by filing an unfair practice charge with PERB should be excused." (Id. at p. 171, 6 Cal.Rptr.2d 714.) The court continued: "Exhaustion should be excused for another, interrelated reason"futility. (Ibid.) PERB had explicitly disavowed jurisdiction over the dispute. (Id. at p. 168, 6 Cal.Rptr.2d 714.) Resort to the agency *178 thus would have been futile. (Ibid.) And "the process of seeking a writ to compel PERB to assume jurisdiction would have greatly increased the time required to resolve this dispute, thus aggravating the potential irreparable injury." (Id. at p. 172, fn. 8, 6 Cal.Rptr.2d 714.)
This case is distinguishable from Department of Personnel Administration on both grounds cited in that case, futility and irreparable harm. First, PERB has not disavowed jurisdiction; to the contrary, it has vigorously claimed it. (Cf. Department of Personnel Administration v. Superior Court, supra, 5 Cal.App.4th at p. 168, 6 Cal.Rptr.2d 714.) Second, this case does not present an "unprecedented" crisis or other unique circumstances. (Cf. id. at p. 171, 6 Cal.Rptr.2d 714.) A strike by public employees is threatened, albeit one that carries the risk of public harm.
Moreover, as discussed above, the available administrative remedies are equal to the task at hand, given PERB's "broad powers, including the right to seek injunctive relief on the request of a party to a complaint." (Fresno, supra, 125 Cal. App.3d at p. 271, 177 Cal.Rptr. 888; see Department of Personnel Administration v. Superior Court, supra, 5 Cal.App.4th at p. 171, 6 Cal.Rptr.2d 714 [recognizing "the possibility that PERB could have ordered the same relief as that provided by respondent superior court"].)

B. Strength of Jurisdiction Argument
The second factor in the analysis is "the strength of the legal argument that the agency lacks jurisdiction...." (Coachella Valley, supra, 35 Cal.4th at p. 1082, 29 Cal.Rptr.3d 234, 112 P.3d 623.) That factor also weighs against excusing exhaustion.
For all the reasons discussed above, the City's jurisdictional argument is weak.[2] As the San Diego court remarked, PERB's "exclusive initial jurisdiction" is "amply implied by the comprehensiveness of the [statutory] scheme"there, the EERA. (San Diego, supra, 24 Cal.3d at p. 12, 154 Cal.Rptr. 893, 593 P.2d 838.) Furthermore, the Legislature included an express statutory declaration to that effect in the EERA. (See ibid., citing § 3541.5.) Effective in July 2001, it did the same thing in the MMBA. That provision reads: "The initial determination as to whether the charge of unfair practice is justified and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board." (§ 3509, subd. (b).) Taken together, this statute and the California Supreme Court's interpretation of a cognate provision compel the conclusion that PERB has exclusive initial jurisdiction over this dispute.

C. Expertise
In deciding whether exhaustion should be excused, the third and final factor is "the extent to which administrative expertise may aid in resolving the jurisdictional issue." (Coachella Valley, supra, 35 Cal.4th at p. 1082, 29 Cal.Rptr.3d 234, 112 P.3d 623.) As explained above, PERB is "equipped or informed by experience to deal with a specialized field of knowledge," public employment labor relations. (Universal Camera Corp. v. Labor Bd., supra, 340 U.S. at p. 488, 71 S.Ct. 456; accord, Banning Teachers Assn. v. Public Employment Relations Bd., supra, 44 Cal.3d *179 at p. 804, 244 Cal.Rptr. 671, 750 P.2d 313.) "One of PERB's primary functions is to investigate and adjudicate charges of unfair labor practices." (San Francisco, supra, 151 Cal.App.4th at p. 943, 60 Cal. Rptr.3d 516.) Since the jurisdictional issue here turns in part on whether the underlying conduct constitutes an unfair labor practice (and thus is arguably prohibited by the MMBA), the agency's expertise in this area may go a long way in helping to resolve the disputed question of jurisdiction.
In sum, we conclude, this case presents no basis for excusing exhaustion. Our conclusion does not mean that parties subject to PERB's exclusive initial jurisdiction are foreclosed from seeking a judicial determination excusing administrative exhaustion where the particular circumstances warrant it. Whether such circumstances exist may present a case-specific factual question. (Economic Empowerment Foundation v. Quackenbush (1997) 57 Cal.App.4th 677, 692, 67 Cal.Rptr.2d 323 [futility exception to exhaustion requirement "may be an issue of fact in some cases"].) Here, we decide only that the record before us does not warrant such relief.

SUMMARY OF CONCLUSIONS
I. Mootness: Although this controversy is technically moot, we nevertheless exercise our inherent power to address the issues presented, which are important and of continuing interest.
II. Jurisdiction: The Public Employment Relations Board has exclusive initial jurisdiction to determine whether particular public employees covered by the MMBA have the right to strike in cases that implicate the MMBA. Two critical elements combine to compel that conclusion: the amendment of the MMBA, effective in 2001, and prior California Supreme Court precedent. With the statutory amendment, the MMBA was brought under the same jurisdictional umbrella as other public employment statutes, such as the EERA. In prior cases, the California Supreme Court has already ruledtwice that the EERA transfers exclusive initial jurisdiction from the courts to PERB when the public employer was seeking relief from a union's strike activity. (San Diego, supra, 24 Cal.3d 1, 154 Cal.Rptr. 893, 593 P.2d 838; El Rancho, supra, 33 Cal.3d 946, 192 Cal.Rptr. 123, 663 P.2d 893.) That precedent now applies with equal force to the MMBA. The superior court's jurisdiction thus is preempted in favor of PERB.
III. Exhaustion: Applying the three relevant factors to the case presented here, we find no basis for excusing exhaustion. First, the City will not suffer irreparable harm, as the administrative remedies are adequate. Next, its arguments concerning jurisdiction are weak. And finally, the agency's expertise is relevant in resolving the disputed question of jurisdiction.

DISPOSITION
The judgment of dismissal is affirmed.
WE CONCUR: BAMATTRE-MANOUKIAN, Acting P.J., and DUFFY, J.
NOTES
[1] Further unspecified statutory references are to the Government Code.
[2] We use the word "weak" not because we find the City's argument meritless but as a term of art, because "strength of the legal argument that the agency lacks jurisdiction" is the legal criterion. (Coachella Valley, supra, 35 Cal.4th at p. 1082, 29 Cal.Rptr.3d 234, 112P.3d 623.)