[Civ. No. 4907. Fifth Dist. Nov. 4, 1981.]

FRESNO UNIFIED SCHOOL DISTRICT, Plaintiff and Appellant, v.
NATIONAL EDUCATION ASSOCIATION et al., Defendants and Respondents.

COUNSEL

Paterson & Taggart, James C. Romo, Lee T. Paterson and David G. Miller for Plaintiff and Appellant.

Tuttle & Tuttle, Ernest H. Tuttle III and Kay M. Tuttle for Defendants and Respondents.

OPINION

WOOLPERT (W. R.), J.*—This is an appeal by the Fresno Unified School District (School District) from a judgment of dismissal of its action against the National Education Association, California Teachers Association and Fresno Teachers Association, the three associations hereinafter identified as "Teachers." At issue is the right of the School District to prosecute a superior court action for damages against the Teachers without first exhausting the remedies provided by the Education Employment Relations Act (EERA), Government Code sections 3540-3549.3.[1] The administrative agency concerned is the Public Employment Relations Board (PERB).

### THE FACTUAL BACKGROUND

The School District and its local teachers' organization were the parties to a collective bargaining agreement which would have expired but for a provision which called for it to be extended until either a successor agreement was adopted or certain impasse procedures were exhausted. Article XLV of the contract provided: "It is understood and agreed that there will be no strike, work stoppage, slowdown or concerted refusal to perform normal job functions and responsibilities by the Association, its officers and/or agents or members of the teacher bargaining unit during the term of this Agreement."

It appears from a three-count complaint "FOR INTERFERENCE WITH CONTRACTUAL RELATIONS AND BREACH OF CONTRACT" brought by the School District that in late November 1978, the teachers engaged in a work stoppage. Some months had passed without either a new agreement or the impasse procedures being exhausted. The first two causes

---

*Assigned by the Chairperson of the Judicial Council.

[1]References are to the Government Code unless otherwise indicated.

of action are in tort (conspiracy and interference with contract), and the third is a carefully limited contract count alleging the agreement not to strike or withhold services and its breach by Teachers. Demurrers were sustained without leave to amend on the basis that the "activity (alleged in the three causes of action) is arguably an unfair labor practice and the dispute is therefore one within the original exclusive jurisdiction of the PERB ..." and the administrative remedies under EERA had not been exhausted. The ruling on the demurrer resulted in judgment and this appeal.

We have taken judicial notice of documents on file with PERB which indicate that the parties subsequently engaged in PERB proceedings before a hearing officer in which School District apparently sought to gain a negative jurisdictional finding as to the alleged contract violation, and having done so, affirmation was sought before PERB. It was denied. The board found the issue to be inappropriately raised by School District and expressly disclaimed reaching any judgment on the merits. We are informed that PERB proceedings on the noncontractual aspects of these events are pending. Therefore, the School District has been excluded from initial judicial relief and has been denied a forum to litigate its contractual demands. Teachers suggest that EERA may indirectly eliminate all contract remedies; the School District argues to the contrary and, as a lost traveler, seeks directions.

The Developing Labor Relations Law as to Public Employees

"Over the past 20 years, the California Legislature has enacted a series of legislative measures granting public employees, at both the state and local level, a variety of organizational and negotiating rights somewhat analogous to the rights long afforded most employees in the private sector by the federal labor relation laws of the 1930's." (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 173-174 [172 Cal.Rptr. 487, 624 P.2d 1215].)

PERB was created and assigned certain duties and responsibilities, including: (1) determining appropriate units of employees, (2) determining whether a particular item is within the scope of representation, (3) arranging for and supervising representation elections and resolving disputes relating to certification or decertification, (4) establishing a list of available mediators, arbitrators and factfinders, and (5) investigating unfair practice charges relating to alleged violations of the State Employer-Employee Relations Act (SEERA) (Gov. Code, § 3512, et seq.).

PERB was further empowered to take such actions with respect to unfair practice charges as are necessary to effectuate the purposes of the act.

"PERB . . . has been given a . . . specialized . . . and focused task: to protect both employees and the state employer from violations of the organizational and collective bargaining rights guaranteed by SEERA . . . . (PERB is) . . . an agency which possesses and can further develop specialized expertise in the labor relations field." (*Pacific Legal Foundation, supra*, 29 Cal.3d 168, 198.)

■ Our focus must be on the *unfair practice* jurisdiction of PERB. Section 3541.5 of the Government Code states: "The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board." However, subdivision (b) makes this limitation: "The board shall not have authority to enforce agreements between the parties, and shall not issue a complaint on any charge based on alleged violation of such an agreement that would not also constitute an unfair practice under this chapter." Therefore, the "initial determination" of an unfair practice must be by the board even though the practice might also violate the terms of a contract; but the board is not permitted to bootstrap its jurisdiction by deeming mere contractual violations to be unfair practices.

Subdivision (b) restricting PERB jurisdiction must then be compared with the longstanding and unamended provisions of Labor Code section 1126: "Any collective bargaining agreement between an employer and a labor organization shall be enforceable at law or in equity, and a breach of such collective bargaining agreement by any party thereto shall be subject to the same remedies, including injunctive relief, as are available on other contracts in the courts of this State."

Appellant would resolve this appeal by using the plain words of section 1126, with a special look to the third cause of action seeking contractual damages, and by taking guidance in the federal rules which we will mention. Rather than disregard the federal cases we will refer to them and then apply the California approach to public agency preemption which we believe to be overriding.

■ Of first concern to this jurisdictional issue is the meaning of "unfair practice." Section 3543.5 lists five "unlawful" practices of

employers and section 3543.6 is the comparable listing of employee organization activities which are prohibited. Appearing on both lists are refusal to meet and negotiate in good faith and refusal to participate in good faith in the impasse procedure.

■ California courts frequently refer to federal statutes and precedents for guidance; in the case of the Agricultural Labor Relations Board there is a specific statutory direction to do so. (Lab. Code, § 1148.) For purposes of comparison, we note that sections 7 and 8 of the National Labor Relations Act (29 U.S.C.A. §§ 157, 158) define many unfair labor practices. Also, the key federal "preemption" case is *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773]. Concerned with multiple jurisdictions and the need for uniformity of decisions in labor law, it was held that neither federal nor state courts may grant relief on grounds that *arguably* would justify an NLRB remedy against an unfair practice without deferring to the exclusive initial jurisdiction of the NLRB. A like principle applies to California agencies and courts. (*San Diego Teachers Assn.* v. *Superior Court* (1979) 24 Cal.3d 1, 12 [154 Cal.Rptr. 893, 593 P.2d 838].)

The *Garmon* rule has certain exceptions. One, we believe, under federal labor law principles, would permit School District's third cause of action on contract to be separately enforced in court, without the usual preemption even though the contract violation may also have constituted an unfair practice.

Section 301(a) of the Labor Management Relations Act (Taft-Hartley) of 1947, provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (29 U.S.C.A. § 185(a).)

Since 1957 there have been a number of cases from the United States Supreme Court which have interpreted and discussed the meaning of section 301 of the Labor Management Relations Act (LMRA).

*Textile Workers* v. *Lincoln Mills* (1957) 353 U.S. 448 [1 L.Ed.2d 972, 77 S.Ct. 912], held that a federal district court, under section 301, could specifically enforce an agreement to arbitrate and also held that

section 301 mandated that federal labor law be applied in section 301 suits, not state labor law.

In 1962 the Supreme Court handed down a number of important decisions. *Dowd Box Co.* v. *Courtney* (1962) 368 U.S. 502 [7 L.Ed.2d 483, 82 S.Ct. 519] held that state courts had concurrent jurisdiction to enforce collective bargaining agreements under section 301 of the LMRA even though the breach of contract was arguably an unfair labor practice within the jurisdiction of the NLRB. *Teamsters Local* v. *Lucas Flour Co.* (1962) 369 U.S. 95 [7 L.Ed.2d 593, 82 S.Ct. 571], noted that federal labor law would prevail over any "local" inconsistent labor law. *Atkinson* v. *Sinclair Refining Co.* (1962) 370 U.S. 238 [8 L.Ed.2d 462, 82 S.Ct. 1318] held (1) that an employer may bring suit against a union for damages for breach of a no-strike provision in their collective bargaining agreement and the question of whether the employer first had to arbitrate the issue was a contract question which the court could decide and (2) that since section 301 suits are subject to federal law, the employer could not sue the individual union leaders and agents, even though state law would have allowed such a cause of action. Only the union, not union agents or members, may be sued and forced to atone for union wrongs under section 301.

*Smith* v. *Evening News Assn.* (1962) 371 U.S. 195 [9 L.Ed.2d 246, 83 S.Ct. 267], held that individual employee suits for breach of contract, even to redress a breach which was "uniquely personal," could be brought under section 301 of the LMRA even though the employer's conduct in fact would constitute an unfair labor practice within the jurisdiction of the NLRB.

*Humphrey* v. *Moore* (1964) 375 U.S. 335 [11 L.Ed.2d 370, 84 S.Ct. 363], held that an employee could sue his union in state court to redress union interference with rights the individual employee had because of a collective bargaining agreement if the interference would constitute a breach of the duty of fair representation.

*Vaca* v. *Sipes* (1967) 386 U.S. 171 [17 L.Ed.2d 842, 87 S.Ct. 903], held that an employee could sue both his union and his employer under section 301 if the employee alleged that the union duty of fair representation was breached. If that breach was proved the employee was excused from exhausting contractual remedies in the collective bargaining agreement before suing the employer. It was said to be irrelevant

that the breach of duty was also an unfair labor practice within the jurisdiction of the NLRB.

*Farmer* v. *Carpenters* (1977) 430 U.S. 290 [51 L.Ed.2d 338, 97 S.Ct. 1056], held that California trial courts have jurisdiction to hear suits for intentional infliction of mental distress even though involving unfair labor practices. This tort cause of action came within a *Garmon* exception to the preemption doctrine of exclusive NLRB jurisdiction because of the nature of the tort which was said to be deeply rooted in local feeling and responsibility. The court also noted the federal cases which allow actions to proceed in state court for breach of collective bargaining agreements, affirming them to be within a further "exception" to the *Garmon* preemption doctrine.

A summary of the 301 exception is found in a case involving a suit by a union employee against his employer for wrongful discharge under a collective bargaining agreement when the employee's union was also being sued for breach of the duty of fair representation. The decision noted: "Section 301 of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. § 185, provides for suits in the district courts for violation of collective-bargaining contracts between labor organizations and employers without regard to the amount in controversy. This provision reflects the interest of Congress in promoting 'a higher degree of responsibility upon the parties to such agreements ....' [Citations.] The strong policy favoring judicial enforcement of collective-bargaining contracts was sufficiently powerful to sustain the jurisdiction of the district courts over enforcement suits even though the conduct involved was arguably or would amount to an unfair labor practice within the jurisdiction of the National Labor Relations Board. [Citations.] Section 301 contemplates suit by and against individual employees as well as between unions and employers; and contrary to earlier indications § 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge. [Citation.]" (*Hines* v. *Anchor Motor Freight* (1976) 424 U.S. 554, 561-562 [47 L.Ed.2d 231, 96 S.Ct. 1048].)

In view of these federal cases it is evident that if this suit involved employees and an employer subject to the NLRA, count three (breach of a collective bargaining agreement) would properly be before the superior court. In that sense the "theory" of action becomes an all important consideration. The first two theories of action sound in tort. The first theory asserts the strike was illegal and therefore the employer

could receive damages. The second theory is grounded in the tort of interference with contract. Either theory sets forth what would be, at minimum, arguably an unfair labor practice. It could well be urged that to allow the courts to address these actions could undermine the very basis of federal labor law and that the NLRB should be the one to address and remedy any such unfair labor practice.

The theories, while sounding in tort, are not of the type spoken of in *Farmer* where the wrong was not essentially about a labor dispute. Here the tort is not a "peripheral concern" of labor law. Rather, the tort action goes to the essence of labor law—the right to strike: the very fabric of the NLRA could be destroyed if such suits could be maintained. (*Motor Coach Employees* v. *Lockridge* (1971) 403 U.S. 274 [29 L.Ed.2d 473, 91 S.Ct. 1909].)

Conversely, the United States Supreme Court has for 20 years held that the third cause of action could proceed because Congress did not intend for the NLRB to decide *contract* questions. This contract count would be clearly within the terms of section 301.

### PREEMPTION IN CALIFORNIA

■ While the federal labor law exceptions to the *Garmon* rule have been expanding, in California, to the contrary, the state "deference" rule and its purpose have gained strength. It is true that Labor Code section 1126 in its unamended clear language confirms the right of the parties to a collective bargaining agreement to litigate in the courts as in the case of other contracts. The state "1126" and the federal "301" provisions have a similarity which cannot be overlooked. However, when the PERB jurisdiction was spelled out in negative terms in section 3541.5, subdivision (b) there was no qualification of the PERB jurisdiction over activities of an unfair practice character, and, instead of sharing the jurisdiction with the judiciary, section 3541.5 conflicts with the federal 301 and the state 1126 by its clear statement that the "initial determination" of unfair practice is with PERB.

We therefore turn to California cases for guidance on the issue whether a contract between a public school district and its teachers may be the subject of judicial relief. Alternatively, the question may be: As to public school employment contracts, is there anything left of section 1126?

■ Sophistication of pleading actions is not the key to jurisdiction. Preemption exists "to shield the system (of regulation of labor relations) from conflicting regulation of conduct. It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern." (*Motor Coach Employees* v. *Lockridge, supra,* 403 U.S. 274, 292 [29 L.Ed.2d 473, 486, 91 S.Ct. 1909].) Thus, declaratory relief sought to avoid the inconvenience of deferred judicial review was not permitted as a means to bypass a public board similar to PERB. (*United Farm Workers* v. *Superior Court* (1977) 72 Cal.App.3d 268 [140 Cal.Rptr. 87].)

■ Prior to the effective date of EERA it was held that it was unlawful for public school teachers to strike and that a union could be sued for damages caused by such an illegal strike. (*Pasadena Unified Sch. Dist.* v. *Pasadena Federation of Teachers* (1977) 72 Cal.App.3d 100 [140 Cal.Rptr. 41].)

Soon after PERB came into existence a school district found itself into the new school year without having reached a new salary agreement. The school board then froze salaries at the prior contract levels. In a mandamus proceeding it was held that judicial relief was inappropriate and that first resort must be to PERB because the action of the school district was arguably an unfair practice. (*Amador Valley Secondary Educators Assn.* v. *Newlin* (1979) 88 Cal.App.3d 254 [151 Cal.Rptr. 725].) The "initial determination" language of section 3541.5 was found to be conclusive.

*Council of School Nurses* v. *Los Angeles Unified School Dist.* (1980) 113 Cal.App.3d 666 [169 Cal.Rptr. 893] followed the *Amador* case and held PERB had initial exclusive jurisdiction when employees sought to challenge provisions of a collective bargaining agreement as being violative of the Education Code. The court's conclusion was: "Finally, although the appellants correctly contend that the Public Employment Relations Board had no authority to enforce the collective bargaining agreement, the matter in this case does not concern itself with the enforcement of the collective bargaining agreement. Instead, the issue in this case was to determine whether the provisions of the collective bargaining agreement constituted unfair practices on the part of the Los Angeles Unified School District and United Teachers Los Angeles.

"Therefore, since the dispute alleged by the appellants could have constituted unfair practices, the trial court acted properly in dismissing the actions." (*Id.*, at p. 672.)

The *Council of School Nurses* case rejects immediate judicial relief of the federal 301 type. The nurses were complaining of a contractual obligation to work more hours than other school employees. Their judicial plea was for relief from the particular contractual agreement. It was contended that to deny judicial relief would be to expand PERB's jurisdiction beyond the agency's statutory limits. To the contrary, the decision holds that irrespective of the contract and its enforceability, PERB has exclusive jurisdiction to determine whether an unfair practice has been committed and if so, to "fashion remedies" pursuant to EERA. We do note that the mandamus proceeding was an attempt to nullify a contractual provision and not a suit such as ours in which the party seeks to obtain Labor Code section 1126 relief in the clearest terms. We are also aware that there may be little real difference between an action which seeks to void part of an agreement and one which seeks to enforce it. The party seeking one end no doubt would be faced with a cross-complaint asserting the other point of view.

Of greatest significance to this appeal is *San Diego Teachers Assn.* v. *Superior Court, supra,* 24 Cal.3d 1. This case did not involve a suit on a labor contract. However, its principles make our conclusion certain. The parties first filed unfair practice charges against each other. Before any PERB hearing or action the district sought and obtained judicial relief in the form of an injunction against a strike and contempt orders. The defense was that of failure to exhaust EERA remedies. The Supreme Court annulled the contempt orders on the ground that PERB had exclusive initial jurisdiction to determine whether the strike was an unfair practice and what, if any, remedies the board should pursue. We now recite certain principles from the case.

1. By engaging in the strike the teachers *may* have committed at least two of the unfair practices forbidden such employee organizations (failure to negotiate in good faith and refusal to participate in the impasse procedure).

2. The district was not required to exhaust its remedy under EERA unless PERB could furnish relief equivalent to that which could be provided judicially. The court noted an instance in which municipal court relief had been appropriately sought by an employer-landlord seeking to

repossess certain premises. (*Vargas* v. *Municipal Court* (1978) 22 Cal.3d 902, 912 [150 Cal.Rptr. 918, 587 P.2d 714].)

3. A teacher strike does not present insurmountable relief problems, PERB having broad powers, including the right to seek injunctive relief on the request of a party to a complaint. The district asserted that PERB would be concerned only with its "narrow" negotiating process and therefore strike-caused harm would be overlooked. Federal exceptions to the preemption rule were cited, such as damage actions for intentional infliction of mental distress. The response of the court is of particular significance to our case: "That argument erroneously presupposes a disparity between public and PERB interests. The public interest is to minimize interruptions of educational services. Yet did not an identical concern underlie enactment of the EERA? The Legislature was aware of the increase in public employee work stoppages despite the availability and use of injunctions and other sanctions to prevent or punish them. (See Cal. Assem. Advisory Council, Final Rep. (Mar. 15, 1973) pp. 197-198; Cebulsky, *An Analysis of 22 Illegal Strikes and California Law* (1973) 18 Cal. Pub. Employment Re. 2; Comment, *Public Employee Legislation: An Emerging Paradox, Impact, and Opportunity, supra*, 13 San Diego L.Rev. 931, 935.) It does not follow from the disruption attendant on a teachers' strike that immediate injunctive relief and subsequent punishment for contempt are typically the most effective means of minimizing the number of teaching days lost from work stoppages. As observed in *City and County of San Francisco* v. *Cooper, supra*, 13 Cal.3d 898, 917 [120 Cal.Rptr. 707, 534 P.2d 403], the question of appropriate sanctions for illegal strike activity is complex. Harsh, automatic sanctions often do not prevent strikes and are counterproductive. PERB's responsibility for administering the EERA requires that it use its power to seek judicial relief in ways that will further the public interest in maintaining the continuity and quality of educational services." (*San Diego Teachers Assn.* v. *Superior Court, supra*, 24 Cal.3d at p. 11.)

4. There are marked similarities between EERA and NLRA. The *Garmon* preemption rule is reinforced in California by the section 3541.5 "initial determination" requirement. A preemption rule is of overriding significance. The rule must stand even against the argument that to require PERB procedures to be commenced and PERB to seek injunctive relief might cause irreparable injury should PERB decide against seeking court injunctive relief. The court answer to the "what if the board doesn't . . ." question is of additional significance to our

facts: "But the EERA gives PERB discretion to withhold as well as pursue, the various remedies at its disposal. Its mission to foster constructive employment relations (§ 3540) surely includes the long-range minimization of work stoppages. PERB may conclude in a particular case that a restraining order or injunction would not hasten the end of a strike (as perhaps neither did here) and, on the contrary, would impair the success of the statutorily mandated negotiations between union and employer. A court enjoining a strike on the basis of (1) a rule that public employee strikes are illegal, and (2) harm resulting from the withholding of teachers' services cannot with expertise tailor its remedy to implement the broader objectives entrusted to PERB.

"If PERB had declined not only to seek injunctive relief but also to issue an unfair practice complaint, would the district have been without a remedy because a decision of nonissuance is not judicially reviewable? (See § 3542, subd. (b).) Since no declination was made here we need not decide what effect it might have had on the district's right to proceed in court. (Cf. *San Diego Unions* v. *Garmon, supra,* 359 U.S. 236, 245-246 [3 L.Ed.2d 775, 783-784, 79 S.Ct. 773] [NLRB refusal to exercise jurisdiction does not necessarily empower state court to act].) (*Id.,* at pp. 13-14.)

The court included a footnote quotation from *Motor Coach Employees* v. *Lockridge, supra,* 403 U.S. 274, 288 [29 L.Ed.2d 473, 483, 91 S.Ct. 1909], as follows: "The rationale for pre-emption, then, rests in large measure upon our determination that when it set down a federal labor policy Congress plainly meant to do more than simply to alter the then-prevailing substantive law. It sought as well to restructure fundamentally the processes for effectuating that policy, deliberately placing the responsibility for applying and developing this comprehensive legal system in the hands of an expert administrative body rather than the federalized judicial system."

OUR VARIATION: JUDICIAL AND ADMINISTRATIVE ACCOMMODATION

We conclude that the apparent conflict between the jurisdiction of PERB over unfair practices and the right of the parties to litigate their contractual rights under Labor Code section 1126 requires an accommodation.

If we were to disregard the purpose of EERA we might consider the rule that "where a statute provides an administrative remedy and also

provides an alternative judicial remedy the rule requiring exhaustion of the administrative remedy has no application if the person aggrieved and having both remedies afforded him by the same statute, elects to use the judicial one." (*City of Susanville* v. *Lee C. Hess Co.* (1955) 45 Cal.2d 684, 689 [290 P.2d 520].) Here, however, we have two separate statutes with the EERA enactments postdating Labor Code section 1126. The *San Diego Teachers* case emphasizes the importance of the expert administrative agency and the need for uniformity of decisions. Special significance must therefore be given to the later EERA statutes.

There are relationships in which a factual determination will solve the jurisdictional problem by placing the forum in either an administrative agency or the courts, on an exclusive basis. (*Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76 [293 P.2d 18].) In *Scott* the jurisdictional fact was whether injuries were suffered by a workman within the course and scope of his employment. The court and administrative agency were held to have concurrent jurisdiction to determine jurisdiction, and once determined it would be exclusive. The finding of the first body to determine the issue would be res judicata in both tribunals.

Litigation between a school district and its employees over the meaning of a contract and the right to withhold services, is not of the *Scott* variety. At the minimum, the initial review of these facts must be in PERB as to the tort causes of action. We do not decide what, if anything, may be left of the tort theories of action after a PERB review. The trial court properly dismissed the action as to these counts. However, there is an apparent concurrent jurisdiction of the court and the public agency as to the contract count, with statutory priority in PERB; but judicial relief may even then be necessary and proper "on the contract." Since there is no way to anticipate the nature and extent of the relief which will be afforded in the PERB proceedings, and since the negotiation and settlement procedures which may be undertaken by the agency may change the factual setting and its basis for contract damages, we cannot anticipate whether further judicial relief will be needed, or to what extent.[2]

---

[2]Likewise, we do not need to determine to what extent res judicata or collateral estoppel principles apply. We note that in *San Diego Teachers Assn.* v. *Superior Court, supra,* 24 Cal.3d at page 11, reference is made to the finality of board findings pursuant to section 3542. In *Vargas* v. *Municipal Court, supra,* 22 Cal.3d at page 916, the court noted that the unlawful detainer determinations should have no binding effect in the related ALRB proceedings.

Finally, we quote from *Pacific Legal Foundation* v. *Brown, supra*, 29 Cal.3d 168, 199-200: "Indeed, in a number of recent cases this court has explicitly eschewed the 'meat ax' approach proposed by petitioners and has instead applied harmonizing principles in dealing with overlapping jurisdictional schemes comparable to those present in the instant case. In *Vargas* v. *Municipal Court* (1978) 22 Cal.3d 902, 910-913, 916 [150 Cal.Rptr. 918, 587 P.2d 714], for example, this court accommodated the municipal court's jurisdiction over unlawful detainer actions and the Agricultural Labor Relations Board's unfair labor practice jurisdiction, recognizing that neither entity completely ousted the other of jurisdiction under all circumstances. Similarly, in *Kaplan's Fruit & Produce Co.* v. *Superior Court* (1979) 26 Cal.3d 60, 67-75 [162 Cal.Rptr. 745, 603 P.2d 1341], we held that the ALRB's jurisdiction over unfair labor practices did not prevent a superior court from granting equitable relief in instances 'when the board cannot provide a full and effective remedy.' And in *San Diego Teachers Assn.* v. *Superior Court, supra*, 24 Cal.3d 1, 12-14, we held that in light of the expertise which PERB brings to labor disputes arising under the EERA, the superior court which had jurisdiction over an equitable action should have stayed its hand until the specialized agency had initially addressed the dispute."

We therefore hold that as to the contract cause of action the trial court had concurrent jurisdiction pursuant to Labor Code section 1126. However, applying a *Vargas* rule of accommodation the court action should be stayed as to count three rather than dismissed. The stay protects the status quo of the contract issues pending the resolution of PERB of the unfair practice issues which are within its exclusive jurisdiction and subject to review only pursuant to the limits provided in section 3542. As indicated in *Vargas*, the trial court retains discretion as to how long the judicial proceedings should be stayed.

As to counts one and two the judgment is affirmed; it is reversed as to count three and remanded for the court's exercise of discretion on the appropriateness of a stay of proceedings under current factual conditions.

Zenovich, Acting P. J., and Hanson (P. D.), J., concurred.