163 Cal.App.4th 139 (2008)
COUNTY OF CONTRA COSTA, Plaintiff and Respondent,
v.
PUBLIC EMPLOYEES UNION LOCAL ONE, Defendant and Appellant;
PUBLIC EMPLOYMENT RELATIONS BOARD, Intervener and Appellant.
COUNTY OF CONTRA COSTA, Plaintiff and Respondent,
v.
CALIFORNIA NURSES ASSOCIATION, Defendant;
PUBLIC EMPLOYMENT RELATIONS BOARD, Intervener and Appellant.
No. A115095. No. A115118.
Court of Appeals of California, First District, Division One.
May 22, 2008.
*142 Leonard Carder, Arthur Krantz and Margot A. Rosenberg, for Defendant and Appellant.
Tami Bogert, Robin Wesley, Tammy Samsel and Harry J. Gibbons, for Intervener and Appellant.
Altshuler Berzon, Jonathan Weissglass and Linda Lye, for California State Council of Service Employees as Amicus Curiae on behalf of Defendant and Appellant and for Intervener and Appellant.
Silvano B. Marchesi, County Counsel, Cynthia A. Schwerin, Kevin T. Kerr and Kelly M. Flanagan, Deputy County Counsel for Plaintiff and Respondent.
Jennifer B. Henning for California State Association of Counties and League of California Cities as Amici Curiae on behalf of Plaintiff and Respondent.

*143 OPINION
SWAGER, J.
Appellants Public Employees Union Local One (Local One) and the Public Employment Relations Board (PERB) (collectively referred to as appellants) appeal an order of the trial court that concluded the PERB does not have exclusive initial jurisdiction over whether certain essential employees may be prevented from participating in a strike. Local One also contends that the court erred in failing to comply with the evidentiary hearing procedures found within Labor Code section 1138 et seq., before issuing its temporary restraining order. We affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The essential facts underlying this case are not in dispute. On June 23, 2006, respondent the County of Contra Costa (County) filed a complaint against several public employee unions, seeking to enjoin certain essential employees from participating in a one-day strike.[1] The unions represented approximately 5,800 employees. The County sought the order on the basis that the participation of approximately 270 employees in the strike would create a substantial and imminent threat to public health and safety. The County also sought to enjoin all the members of a nurses' union from engaging in a sympathy strike.[2]
That same day, the trial court issued a temporary restraining order (TRO) enjoining approximately 160 employees from striking, including airport operations specialists, animal services workers at the County's animal shelters, probation counselors, and various County hospital workers. The court also issued a TRO forbidding the nurses from engaging in a sympathy strike, finding that they were also essential public employees. The court did not hold an evidentiary hearing before issuing the TRO's.
The PERB is the state agency charged with resolving disputes and enforcing statutes that pertain to several categories of public employees, such as the Educational Employment Relations Act (EERA) (see Gov. Code, § 3541.3), the State Employer-Employee Relations Act (see Gov. Code, § 3513, *144 subd. (g)), and, as of 2001, the Meyers-Milias-Brown Act (MMBA; Gov. Code, § 3500 et seq.), which applies to local government agencies and their employees (see Gov. Code, § 3509).
On June 23, 2006, the PERB intervened in the trial court, arguing that it has exclusive jurisdiction over the issue before the court, since the unions' proposed strike "is arguably protected or prohibited by the MMBA." Over Local One's objections, the court found that Labor Code section 1138 et seq., did not apply to the proceedings.
On June 30, 2006, the court held a hearing and determined that the MMBA did not apply to the County's complaint, ruling that the PERB did not have exclusive jurisdiction. These consolidated appeals followed.

DISCUSSION
Appellants do not challenge the merits of the orders insofar as they hold that the identified employees are "essential" to maintaining public health and safety. They do, however, challenge the trial court's finding that the PERB did not have exclusive initial jurisdiction over this matter. Local One also challenges the proceedings leading to the issuance of the TRO's, arguing that the orders are invalid because the court failed to comply with Labor Code section 1138 et seq.[3]

I. Standard of Review

Where the propriety of an order granting a temporary restraining order or a preliminary injunction "`depends upon a question of law . . . the standard of review is not abuse of discretion but whether the superior court correctly interpreted and applied [the] law, which we review de novo.' [Citation.]" (Vo v. City of Garden Grove (2004) 115 Cal.App.4th 425, 433 [9 Cal.Rptr.3d 257].) The issues here concern whether the court correctly interpreted relevant statutes in light of applicable case law. We will therefore review the court's order independently.[4]

*145 II. Historic Background and Statutory Framework

A. PERB

We begin by reviewing the history of the PERB that is concisely set forth in Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd. (2005) 35 Cal.4th 1072 [29 Cal.Rptr.3d 234, 112 P.3d 623] (Coachella Valley). "The history of the PERB begins in 1975, when the Legislature adopted the Educational Employment Relations Act (Gov. Code, §§ 3540-3549.3; . . .), which governs employer-employee relations for public schools (kindergarten through high school) and community colleges. [Citation.] As part of this new statutory scheme, the Legislature created the Educational Employment Relations Board (EERB), `an expert, quasi-judicial administrative agency modeled after the National Labor Relations Board, to enforce the act.' [Citation.] The Legislature vested the EERB with authority to adjudicate unfair labor practice charges under the EERA." (Id. at pp. 1084-1085.)
"Two years later, in 1977, the Legislature enacted the State Employer-Employee Relations Act [citation] to govern relations between the state government and certain of its employees. [Citation.] It was later renamed, and its official name is now the Ralph C. Dills Act (hereafter the Dills Act). [Citation.] Despite the declaration of purpose two years earlier in the EERA, the Legislature did not incorporate the Dills Act into the EERA, instead enacting it as a separate chapter in the Government Code preceding the EERA. The Legislature did, however, expand the jurisdiction of the EERB to include adjudication of unfair practice charges under the Dills Act, and as a result the EERB was renamed the PERB. [Citations.]
"Since 1977, the PERB's jurisdiction has continued to expand as the Legislature has enacted new employment relations laws covering additional categories of public agencies and their employees. In 1978, the Legislature enacted the Higher Education Employer-Employee Relations Act [citation] to govern labor relations within the University of California, the California State University, and Hastings College of the Law. [Citation.] In 2000, the Legislature not only brought the MMBA within the PERB's jurisdiction [citation], it also enacted the Trial Court Employment Protection and Governance Act [citation] to govern labor relations and other employment matters within the state's trial courts. [Citation.] In 2002, the Legislature enacted the Trial Court Interpreter Employment and Labor Relations Act [citation] to govern labor relations and employment matters for trial court interpreters. [Citation.] In 2003, the Legislature enacted the Los Angeles County Metropolitan Transit *146 Authority Transit Employer-Employee Relations Act [citation] to govern labor relations for a public transit district." (Coachella Valley, supra, 35 Cal.4th 1072, 1085-1086.)

B. The MMBA

(1) The County and the employee organizations involved here are subject to the MMBA. "The MMBA imposes on local public entities a duty to meet and confer in good faith with representatives of recognized employee organizations, in order to reach binding agreements governing wages, hours, and working conditions of the agencies' employees. [Citation.] `The duty to bargain requires the public agency to refrain from making unilateral changes in employees' wages and working conditions until the employer and employee association have bargained to impasse . . . .' [Citation.]" (Coachella Valley, supra, 35 Cal.4th 1072, 1083.)
"The [MMBA] governs collective bargaining and employer-employee relations for most California local public entities, including cities, counties, and special districts. Before July 1, 2001, an employee association claiming a violation of the MMBA could bring an action in superior court. [Citation.] Effective July 1, 2001, however, the Legislature vested the California Public Employment Relations Board (PERB) with exclusive jurisdiction over alleged violations of the MMBA." (Coachella Valley, supra, 35 Cal.4th 1072, 1077.)
Government Code section 3509, subdivision (b),[5] provides: "A complaint alleging any violation of this chapter . . . shall be processed as an unfair practice charge by the board. The initial determination as to whether the charge of unfair practice is justified and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board. The board shall apply and interpret unfair labor practices consistent with existing judicial interpretations of this chapter." (Italics added.) The PERB also has the authority to petition the trial courts "for appropriate temporary relief or restraining order" after "issuance of a complaint charging that any person has engaged in or is engaging in an unfair practice." (§ 3541.3, subd. (j); see also § 3509, subd. (a).)[6]
*147 (2) According to the PERB's regulations, employee organizations commit an unfair practice under the MMBA if they do any of the following: (1) cause or attempt to cause a public agency to engage in conduct prohibited by the MMBA, (2) interfere with, intimidate, restrain, coerce or discriminate against public employees because of their exercise of the right to join or abstain from joining labor organizations, (3) refuse or fail to meet and confer in good faith, (4) fail to exercise good faith while participating in any impasse procedure, or (5) in any other way violate the MMBA. (Cal. Code Regs., tit. 8, § 32604.)

III. Did the Trial Court Have Jurisdiction to Issue the Injunction?

Local One and the PERB argue that the PERB has exclusive initial jurisdiction over whether a public employee strike is unlawful. The County claims, and the trial court agreed, that the PERB did not have jurisdiction over the subject matter of its complaint because the County did not allege any unfair practice under the MMBA. On appeal, the County maintains it is not required to go to the PERB before resorting to the courts to obtain orders protecting the public from imminent threats to health and safety.

A. County Sanitation Dist. No. 2 v. Los Angeles County Employees' Assn. (1985) 38 Cal.3d 564

(3) We begin our analysis with the seminal case on the public health and safety exception to the right to strike. In County Sanitation, the Supreme Court held for the first time that public employees have the right to strike: "[W]e conclude that the common law prohibition against public sector strikes should not be recognized in this state. Consequently, strikes by public sector employees in this state as such are neither illegal nor tortious under California common law." (County Sanitation Dist. No. 2 v. Los Angeles County Employees' Assn. (1985) 38 Cal.3d 564, 585 [214 Cal.Rptr. 424, 699 P.2d 835] (County Sanitation).)
Concurrently, the court gave public entities the right to go to court to request an injunction based on a showing that the strike would have a detrimental impact on public health and safety: "After consideration of the various alternatives before us, we believe the following standard may properly guide courts in the resolution of future disputes in this area: strikes by public employees are not unlawful at common law unless or until it is clearly demonstrated that such a strike creates a substantial and imminent threat to the health or safety of the public. This standard allows exceptions in certain essential areas of public employment (e.g., the prohibition against firefighters and law enforcement personnel) and also requires the courts to determine on *148 a case-by-case basis whether the public interest overrides the basic right to strike." (County Sanitation, supra, 38 Cal.3d 564, 586, italics added.)
Thus, County Sanitation stands for the proposition that public employee strikes are not unlawful at common law to the extent that they can be conducted without causing a substantial threat to public health or safety. It also authorizes public agencies to turn to the courts to prevent such threats. And, contrary to the PERB's position on appeal, while the parties in County Sanitation were covered by the MMBA, the court's decision did not turn on that act. Instead, the court based its ruling on common law, noting that the Legislature had "intentionally avoided the inclusion of any provision [in the MMBA] which could be construed as either a blanket grant or prohibition of a right to strike, thus leaving the issue shrouded in ambiguity." (County Sanitation, supra, 38 Cal.3d 564, 573.)
Local One acknowledges that courts historically have had jurisdiction over all matters pertaining to the MMBA, but observes that this changed in 2001, when the PERB obtained jurisdiction over the MMBA under section 3509, subdivision (a). It contends that County Sanitation no longer applies because it predates this legislative change. The PERB also argues that County Sanitation does not control because, at the time it was decided, the PERB did not have jurisdiction over the MMBA.
Local One also claims that the trial court erred in relying on the fact that the County did not allege any unfair labor practice or other violation of the MMBA. It claims that courts discussing the EERA have "uniformly held that strike activity is both `arguably prohibited' and `arguably protected'" by the EERA. Amicus curiae California State Council of Service Employees argues that "Whether or not the County contends the strike violates the common law, rather than the MMBA, is immaterial."

B. Cases Construing the PERB's Authority Under the EERA

Local One claims that the California Supreme Court and the Courts of Appeal have consistently held that the PERB has exclusive jurisdiction with respect to the EERA over all injunction actions and other legal disputes involving strikes. It relies on four cases decided under the EERA for the proposition that the PERB now also has exclusive initial jurisdiction under the MMBA over all strike issues, including whether a threatened strike poses a danger to public health and safety. We are not convinced that the PERB's jurisdiction extends to matters falling outside the statutes it administers.
*149 In San Diego Teachers Assn. v. Superior Court (1979) 24 Cal.3d 1 [154 Cal.Rptr. 893, 593 P.2d 838] (San Diego Teachers), a trial court had issued contempt orders against a teachers' union and some of its members after they failed to abide by an injunction forbidding an allegedly unlawful strike. (Id. at p. 4.) Significantly, when the injunction was issued, both the teachers' association and the district had already filed unfair practice charges against each other with the PERB. (Id. at p. 3.)
The Supreme Court annulled the contempt orders, holding that the PERB had exclusive initial jurisdiction to determine whether the strike was an unfair practice and what, if any, remedies should be pursued. (San Diego Teachers, supra, 24 Cal.3d 1, 14.) In articulating its reasoning, the court observed that the PERB was uniquely situated to evaluate the circumstances of the strike, concluding that "A court enjoining a strike on the basis of (1) a rule that public employee strikes are illegal, and (2) harm resulting from the withholding of teachers' services cannot with expertise tailor its remedy to implement the broader objectives entrusted to PERB." (Id. at p. 13.) The court also disagreed with the school district's assertion that the PERB would be unable to fully address the public's interests when fashioning its own remedy for the alleged violations. (Id. at p. 11.)
While the court's reasoning is broadly worded, we believe San Diego Teachers must be read in context. In particular, we note the court found it significant that the teachers' association may have committed at least two unfair practices by undertaking the strike: "(1) failure to negotiate in good faith (§ 3543.6, subd. (c)), and (2) refusal to participate in the impasse procedure (§ 3543.6, subd. (d))." (San Diego Teachers, supra, 24 Cal.3d 1, 8.) The court also explicitly limited its holding to "injunctions against strikes by public school employee organizations recognized or certified as exclusive representatives . . . ." (Id. at p. 14.) We believe these factors distinguish San Diego Teachers from the present case.[7]
Appellants also rely on El Rancho Unified School Dist. v. National Education Assn. (1983) 33 Cal.3d 946 [192 Cal.Rptr. 123, 663 P.2d 893] (El Rancho). In El Rancho, the Supreme Court held that the EERA had divested the superior court of jurisdiction over a school district's tort suit for *150 damages arising out of a teachers' strike led by noncertified unions. (El Rancho, supra, at p. 961.) Applying principles of federal preemption, the court held that the PERB has initial exclusive jurisdiction over all conduct that is arguably protected or prohibited by the EERA. (El Rancho, supra, at pp. 953, 957.) As in San Diego Teachers, the school district in El Rancho had filed unfair practice charges with the PERB prior to filing its lawsuit. (El Rancho, supra, at p. 949.)
(4) Significantly for our purposes, the court stated that "strikes are an unfair practice under [the] EERA only if they involve a violation of the act's provisions." (El Rancho, supra, 33 Cal.3d 946, 957, italics added.) The court also noted that the "PERB has exclusive initial jurisdiction to determine whether such a strike is an unfair practice and what, if any, remedies should be pursued." (Id. at p. 961, italics added.) While the court did conclude that the PERB would take the harm caused to the general public by a teachers' strike into account, this conclusion was in the context of the PERB already having assumed jurisdiction over the underlying alleged unfair labor practice. Thus, we believe El Rancho should not be read so broadly as to apply to any strike-related issue that does not clearly implicate an unfair labor practice.
The PERB notes that the EERA, like the MMBA, is silent on the issue of strikes, yet the Supreme Court interpreted the PERB's jurisdiction over the EERA to include strike conduct in both San Diego Teachers and El Rancho. The PERB also emphasizes that strikes are a part of the bargaining relationship that is described in section 3505 of the MMBA. The PERB concludes that "a strike by essential employees is conduct that is arguably protected by the MMBA as an exercise of employee rights or is arguably prohibited by the MMBA as an unlawful coercive pressure tactic."
The facts underlying the strikes in the two Supreme Court cases, however, clearly implicated unlawful labor practices. While appellants appear to argue that strike-related conduct is always either arguably prohibited or protected by the MMBA, if appellants were correct there would have been no need for the court in El Rancho to limit its holding to strikes that are also unfair practices. Moreover, in the present case, the court did not enjoin the strike; it enjoined a relatively small number of employees who provide "essential public services, the disruption of which would cause a substantial and imminent danger to the public health or safety" from participating in the strike.[8]
*151 We recognize that our colleagues in the Sixth District arrived at the opposite conclusion in the recent City of San Jose case. The facts of that case concerned a threatened job action by a union representing sanitation workers. (City of San Jose, supra, 160 Cal.App.4th 951, 958.) The city filed a complaint with the superior court, seeking to enjoin certain specified employees from participating in a work stoppage. As in the present case, the city argued that the employees provided services essential to the public health and safety of its citizens. A few days before the city filed the complaint, the union had filed an unfair practice charge against the city with the PERB, alleging that the city had interfered with the employees' right to strike by threatening to apply for injunctive relief. (Ibid.)
After discussing San Diego Teachers, El Rancho, and County Sanitation, the court in City of San Jose concluded that the union's conduct was arguably prohibited by the MMBA: "Despite its label as a common law claim, the underlying activityan allegedly illegal strikemay run afoul of the MMBA." (City of San Jose, supra, 160 Cal.App.4th 951, 970.) The court also found that the union's conduct was arguably protected by the MMBA "because public employees covered by the MMBA enjoy a general right to strike" under County Sanitation. (City of San Jose, supra, at p. 971.) We believe the court's reasoning is overly broad, as it is difficult to envision how any strike-related conduct would not be either arguably prohibited or protected under this analysis, regardless of whether the conduct actually implicates the MMBA.
We also agree with the County that it is significant that both San Diego and El Rancho were decided prior to County Sanitation. Thus, appellants' position that the two earlier cases stand for the proposition that the courts are now divested of jurisdiction to decide matters brought under County Sanitation rests on somewhat shaky ground. In the absence of explicit language to the contrary, we also are not persuaded that the Legislature intended such a result when it gave the PERB jurisdiction over the MMBA.
Moreover, San Diego Teachers and its progeny concern teachers. The trial court in the present case was concerned with employees such as nurses, probation officers, and airport operations specialists. As important as teachers are, the public services involved in this case are on a different order of magnitude. A one-day strike by teachers is unlikely to create a "substantial *152 and imminent threat to the health or safety of the public" (County Sanitation, supra, 38 Cal.3d 564, 586), whereas a one-day strike by nurses could have life-threatening implications.
Appellants also draw our attention to decisions by the Courts of Appeal. In Fresno Unified School Dist. v. National Education Assn. (1981) 125 Cal.App.3d 259 [177 Cal.Rptr. 888] (Fresno), a school district had filed a complaint alleging three causes of action in the aftermath of a teachers' strike. The first theory asserted the strike was illegal and therefore the district was entitled to damages. The second theory was grounded in the tort of interference with contract. The third theory was based in contract, not tort. (Id. at pp. 262-263.)
Concluding the first two theories arguably involved allegations of unfair labor practices, the court held these causes of action were properly dismissed because section 3541.5 gives the PERB exclusive jurisdiction.[9] (Fresno, supra, 125 Cal.App.3d 259, 267-268.) The court further held that, "as to the contract cause of action[,] the trial court had concurrent jurisdiction[,] pursuant to Labor Code section 1126," which provides for judicial enforcement of collective bargaining agreements. The court concluded that, as a matter of accommodation, a stay was proper to protect the status quo of the contract issues pending resolution by the board of the unfair practice issues. (Id. at p. 274.) We do not find Fresno to be dispositive since the case before us does not involve an unfair labor practice.
In Public Employment Relations Bd. v. Modesto City Schools Dist. (1982) 136 Cal.App.3d 881 [186 Cal.Rptr. 634], a school district had filed an unfair practice charge against a teachers' union, accusing the union of violating provisions of the EERA by striking. The district also asked the PERB to seek injunctive relief against the union's work stoppage. (136 Cal.App.3d at pp. 885-886.) The court held that "public policy would best be served if PERB retained initial exclusive jurisdiction over any action which is arguably prohibited or protected by EERA." (Id. at p. 894.) The court concluded "there was reasonable cause for PERB to believe the District violated the duty to bargain in good faith ..." (id. at pp. 894-895) and that it would not "serve public policy to have numerous superior courts throughout the state interpreting and implementing statewide labor policy inevitably with conflicting results" noting "One of the basic purposes for the doctrine of preemption is to bring expertise and uniformity to the task of stabilizing labor relations." (Id. at p. 895.)
*153 We do not see a need to defer to the PERB's expertise in cases such as this. Trial courts are quite capable of resolving these issues. We note the Supreme Court observed the following in County Sanitation: "Although we recognize that this balancing process [in determining whether the public interest overrides the basic right to strike] may impose an additional burden on the judiciary, it is neither a novel nor unmanageable task." (County Sanitation, supra, 38 Cal.3d 564, 586, italics added.)[10]
Nor do we agree with Local One that the present case exemplifies an area of law in need of consistent rulings. Local One claims that without "clear and consistent enforcement from an agency making initial determinations as to which employees it should seek to enjoin from striking, the parties will invariably be left to guess at the outcome that might be reached by a Superior Court judge acting at the last minute, having just heard of the case and considered the law and the issues for the first time that same day." Assuming this is a problem, we fail to see how the PERB review would solve it.
The decision regarding which employees should be covered by County Sanitation's public health and safety exception is very fact specific. Every local agency has different sets of employees who serve different functions. For example, the County in this case was concerned with a possible sympathy strike by nurses. However, many local agencies do not employ nurses. Because of the diversity of job classifications and functions carried out by local agencies, the need for consistent rulings is not compelling. Nor are we troubled by the fact that the parties will have to rely on the judgment of the trial courts, as trial courts have been called upon to address the issues raised by County Sanitation for over two decades.
(5) Fundamentally, whether or not an employee is deemed "essential" under County Sanitation is not a labor law issue; rather, it is a public safety issue. The inquiry does not implicate statewide labor policies, but rather turns on considerations of specific factors such as what tasks are performed by the employees, where the agency is located, and the size of the population served by the agency. These are factual determinations that must be made on a case-by-case basis. For example, sanitation workers may be essential to *154 public health and safety in areas with dense urban populations, but may not be so essential in sparsely populated rural areas. Thus, the PERB's emphasis on the need for uniform statewide policy is not very compelling because the trial court's decision will depend on the circumstances of each individual case.
In sum, we do not believe that San Diego Teachers and its progeny render County Sanitation a nullity. None of the cases cited to by appellants address the precise issue addressed under County Sanitation, namely, whether an otherwise lawful strike may be enjoined on the grounds that it presents a substantial and imminent threat to public health and safety. We acknowledge that strikes by essential public employees can potentially involve unfair labor practices, as, for example, where such strikes constitute a failure to negotiate in good faith. However, we see no evidence of allegations or conduct on the record before us suggesting that any party to this case had committed, or had threatened to commit, an unlawful labor practice.

C. The PERB's Exclusive Jurisdiction and the MMBA

There is no dispute that County Sanitation was decided in 1985, many years before the Legislature gave the PERB jurisdiction over the MMBA. The PERB argues that it is now solely responsible for determining whether a particular strike is protected or prohibited by the MMBA. It relies heavily on Coachella Valley in arguing that the Legislature has removed from the courts their initial jurisdiction over all issues arising under the MMBA.
In Coachella Valley, the Supreme Court held that the three-year statute of limitations period under Code of Civil Procedure section 338, subdivision (a) did not apply to cases brought under the MMBA because, in vesting the PERB with exclusive jurisdiction, the Legislature sought uniformity in the system of law for the regulation of public employment relations. (Coachella Valley, supra, 35 Cal.4th 1072, 1089.) The court concluded that the six-month period found in the EERA and other public employment relations laws should be read to apply to the MMBA, explaining that the Legislature must have intended "a coherent and harmonious system of public employment relations laws in which all unfair practice charges filed with the PERB are subject to the same six-month limitations period." (Coachella Valley, supra, at p. 1090.)
Taking Coachella Valley a step further, the PERB claims that since San Diego Teachers, strikes involving the EERA have consistently been held to be within the PERB's initial exclusive jurisdiction and, consistent with the Supreme Court's desire for uniformity, public agency employers must now seek injunctive relief under County Sanitation by going to the PERB in the first instance. We believe appellants' reading of Coachella Valley is overbroad.
*155 (6) The Supreme Court in El Rancho noted that the PERB has exclusive jurisdiction over strikes under the EERA where those strikes can be characterized as unfair labor practices. Under the rationale of Coachella Valley, it is reasonable to conclude that the PERB now has jurisdiction over strikes under the MMBA insofar as the strikes constitute unfair labor practices. The Supreme Court has never held, however, that all strikes implicate unfair labor practices.
Moreover, we agree with the County that it, not the PERB, has primary responsibility for issues affecting the health and safety of its citizens. "A county may use its police powers to do `"whatever will promote the peace, comfort, convenience, and prosperity" of [its] citizens ..., [and these powers] should "not be lightly limited."' [Citation.]" (San Diego County Veterinary Medical Assn. v. County of San Diego (2004) 116 Cal.App.4th 1129, 1135 [10 Cal.Rptr.3d 885].) Counties are also required by statute to provide a "suitable" place for the detention of juvenile court wards (Welf. & Inst. Code, § 850), properly care for impounded animals (Civ. Code, § 1834; Pen. Code, § 597e), and provide support for indigent persons (Welf. & Inst. Code, § 17000).
(7) In sum, we believe the PERB does not have initial exclusive jurisdiction over whether a strike by essential employees poses an imminent threat to public health and safety. (8) Neither the PERB nor Local One has articulated any unfair practice that is arguably implicated by the County's complaint with respect to the employees the County sought to enjoin. In the absence of any indication that the employees the County was seeking to prevent from striking were committing an unfair practice, or that the County was committing an unfair practice by seeking the injunction, the MMBA was not implicated and the PERB had no jurisdiction over the complaint.
Local One argues that the legislative history of Senate Bill No. 739 (1999-2000 Reg. Sess.) (giving the PERB jurisdiction over the MMBA) shows that the Legislature considered and rejected giving County Sanitation special status. As evidence, it notes at one point during the drafting process, the legislation recognized County Sanitation but that the reference was later deleted.[11] It argues that this deletion means that the PERB is now empowered to apply existing judicial interpretations of the MMBA, including but not limited to County Sanitation. (See § 3509, subd. (a).)
*156 We are not persuaded that the Legislature at any time intended to take away the authority of the courts to hear matters falling under County Sanitation. Appellants have not pointed us to any explanation as to why the County Sanitation language was added initially, nor why it was later removed. In the absence of such an explanation, we decline to find that the Legislature intended the result advocated by appellants. While appellants interpret this history to mean that the Legislature abrogated County Sanitation by implication, a reasonable argument can be made that the Legislature intended the opposite result. In the absence of a clear legislative directive, we decline to conclude that County Sanitation no longer has validity.
Amicus curiae California State Council of Service Employees also argues that the PERB, not the courts, has the authority to implement County Sanitation because section 3510, subdivision (a), states that the MMBA "shall be interpreted and applied by the board in a manner consistent with and in accordance with judicial interpretations...." We question whether County Sanitation is a "judicial interpretation" of the MMBA, as it was decided under the common law. And even if County Sanitation falls within section 3510, subdivision (a), it does not follow that by requiring the PERB to follow judicial interpretations of the MMBA the Legislature simultaneously divested courts of the authority to follow their own judicial precedent.
The PERB argues that section 3509, subdivision (a), gives it the exclusive authority to seek judicial intervention to prevent a strike that the PERB determines to be unlawful under the MMBA. However, as we have indicated, strikes by essential employees are not inherently unlawful under the MMBA. Rather, such strikes may be unlawful pursuant to the holding of County Sanitation. Absent an injunction, "essential" employees are free to strike in a manner consistent with the MMBA.
(9) The PERB also claims that its regulation, section 32465 (Cal. Code Regs., tit. 8, § 32465) vests the final decision regarding injunctive relief with the board. That regulation provides: "Upon receipt of the General Counsel's report, the Board itself shall determine whether to seek injunctive relief." (Ibid.) We interpret this regulation to apply to unfair labor practice charges brought under the MMBA only.
*157 As we do not believe that the MMBA gives the PERB initial exclusive jurisdiction over complaints brought pursuant to County Sanitation, it is unnecessary for us to address appellants' argument that the County was not excused under the exceptions to the doctrine of exhaustion of administrative remedies from seeking redress through the PERB. Nor need we address the County's argument that the PERB's injunction relief procedures are inadequate.[12]

IV. Did the Trial Court Err in Failing to Follow Labor Code Sections 1138 and 1138.5?

Local One claims that the trial court erred by issuing a labor injunction without complying with Labor Code section 1138.1. The County counters that section 1138.1 does not apply to injunctions sought under County Sanitation.
Labor Code section 1138 et seq., took effect on January 1, 2000. Labor Code section 1138.1, subdivision (a), provides: "No court of this state shall have authority to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, of all of the following: [¶] (1) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorized those acts.[¶] (2) That substantial and irreparable injury to complainant's property will follow. [¶] (3) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief. [¶] (4) That complainant has no adequate remedy at law. [¶] (5) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection." (Italics added.)
In examining the five required findings individually, we observe that some of the mandatory findings do not fit the facts of this case. For example, Labor Code section 1138.1, subdivision (a)(2) states that the court must find "That *158 substantial and irreparable injury to complainant's property will follow [from the unlawful acts]." Here, the County was seeking to protect public health and safety, not its property. Moreover, it is unlikely a court would grant an injunction under County Sanitation solely for the purpose of protecting a local agency's property.
Similarly, Labor Code section 1138.1, subdivision (a)(5) requires a court to find that the "public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection." This provision most logically relates to picketing activities conducted on private property, and, in that context, has been construed as follows: "[W]e hold that where law enforcement has been summoned, responds in a timely fashion, protects persons from injury and property from damage, and ensures ingress and egress to and from the premises, there is neither an unwillingness nor an inability to furnish adequate protection. Conversely, where law enforcement is unwilling or unable to afford these protections and services, an injunction may lie." (United Food & Commercial Workers Union v. Superior Court (2000) 83 Cal.App.4th 566, 580 [99 Cal.Rptr.2d 849].)
The evident purpose of this provision is to require parties to rely on law enforcement authorities before resorting to the courts to obtain relief from unlawful acts arising out of concerted labor activities. Courts have observed that Labor Code section 1138.1, subdivision (a)(5) "is modeled upon (indeed is substantially identical to) a provision of the Norris-LaGuardia Act. The Norris-LaGuardia Act was enacted to remedy the abusive use of the injunction in labor disputes. [Citation.] Given the historical track record of abuses of injunctive relief in labor disputes, the Legislature could rationally decide that requiring parties to a labor dispute first to resort to law enforcement remedies would tend to avert abuses in the issuance of injunctive relief." (Waremart Foods v. United Food & Commercial Workers Union (2001) 87 Cal.App.4th 145, 159 [104 Cal.Rptr.2d 359].) Other goals furthered by this subdivision include insulating the judicial branch from police matters that are more properly within the purview of the executive branch, and conserving judicial resources by reducing the court's involvement in matters that could be addressed by invoking the assistance of law enforcement. (Id. at pp. 159-160.)
(10) Moreover, as it is the "public officers" themselves who are the complaining parties in cases such as the one before us, we question how a *159 local agency would ever be able to make a showing that it was unwilling or unable to protect its own property. In sum, we do not believe the Legislature sought to require the trial courts to make such irrelevant findings when issuing injunctions under County Sanitation.[13]
It is also unclear that the Legislature intended for these statutes to apply to public entities. Labor Code section 1138.4 provides that the term "labor dispute" is defined by clauses (i), (ii), and (iii) of Code of Civil Procedure section 527.3, subdivision (b). However, Code of Civil Procedure section 527.3, subdivision (d), provides that "[n]othing contained in this section shall be construed to alter the legal rights of public employees or their employers...."
Local One argues that this limitation does not apply to Labor Code section 1138.4 because that section only incorporates the three subordinate clauses of subdivision (b) of Code of Civil Procedure section 527.3. Local One also argues that the fact Labor Code section 1138.4 contains an exemption for certain peace officers indicates the Legislature intended for the injunction requirements to apply to all other public employees.
We express no opinion as to whether Labor Code section 1138 et seq., applies to public entities or public employees. In view of the limited issue that was before the trial court, we conclude that the provisions of Labor Code section 1138.1, subdivision (a) are inapplicable.
We have narrowly interpreted the scope of the PERB's jurisdiction in this area. This case concerns an issue of importance to every local agency in the state and the labor organizations representing the agencies' employees. We note that a petition for review in the City of San Jose case has already been filed. We urge our Supreme Court to resolve this important issue.

*160 DISPOSITION
The orders are affirmed.
Stein, Acting P. J., Margulies, J., concurred.
NOTES
[1] The defendant unions were: Public Employees Union Local One; Social Services Union, SEIU Local 535; United Clerical, Technical & Specialized Employees, AFSCME Local 2700; and Professional & Technical Employees, AFSCME Local 512.
[2] The nurses' union is the California Nurses Association which represented approximately 500 nurses. It is not a party to this appeal.
[3] The parties have settled their contract negotiations. However, the issues raised are not moot as they are capable of repetition, yet evading review. (United Farm Workers of America v. Superior Court (1975) 14 Cal.3d 902, 906-907 [122 Cal.Rptr. 877, 537 P.2d 1237]; Farron v. City and County of San Francisco (1989) 216 Cal.App.3d 1071, 1074 [265 Cal.Rptr. 317].)
[4] Shortly after oral argument, the Sixth District Court of Appeal published its decision in City of San Jose v. Operating Engineers Local Union No. 3 (2008) 160 Cal.App.4th 951 [73 Cal.Rptr.3d 159] (City of San Jose). At our request the parties have filed supplemental briefing addressing any issues discussed in the opinion that might affect our ruling in this case.
[5] All subsequent statutory references are to the Government Code except where otherwise indicated.
[6] Parties can ask the PERB to seek injunctive relief by giving at least 24 hours' prior notice to the PERB's general counsel and to the party against whom relief is sought. (Cal. Code Regs., tit. 8, § 32450, subd. (c).) The general counsel is required to make a recommendation to the board within 120 hours after the receipt of a request (24 hours if the request is made during a work stoppage or lockout). (Id., § 32460.) If the board is unable to assemble a quorum within 24 hours after the recommendation is filed, the general counsel is authorized to take action on the request. (Id., § 32470.)
[7] The necessity of a nexus between the PERB's jurisdiction and an alleged unfair labor practice has been noted by our Supreme Court: "We do not dispute that PERB has exclusive jurisdiction over issues concerning unfair labor practices. [Citation.] The case at bar, however, does not involve a dispute over an unfair practice. Rather, at issue is whether the union, under the terms of the collective bargaining agreement, can file a civil suit against a noncomplying employee. San Diego Teachers did not address this issue." (San Lorenzo Education Assn. v. Wilson (1982) 32 Cal.3d 841, 853 [187 Cal.Rptr. 432, 654 P.2d 202], fn. omitted.)
[8] In its reply brief, Local One claims that under San Diego Teachers, the "illegality of particular strike conduct under the common law would make the same strike conduct at least `arguably prohibited' under the statutory labor relations law." We are not convinced. As we have noted, the Supreme Court in County Sanitation did not hold that the strike was illegal under the MMBA, instead finding that the relevant statutes were "shrouded in ambiguity" with respect to strikes. (County Sanitation, supra, 38 Cal.3d 564, 573.) We thus believe Local One's argument extends the "arguably prohibited" branch of the preemption doctrine too far.
[9] Section 3541.5 provides, in part: "The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board."
[10] We note the City of San Jose opinion cites to Justice Lucas's dissenting opinion in County Sanitation for the proposition that "`the courts are poor forums for the resolution of [strike related disputes].'" (City of San Jose, supra, 160 Cal.App.4th 951, 973.) Yet, the PERB does not have the authority to issue injunctions on its own. It merely has the authority to seek injunctions, which can only be issued by the very same courts that the PERB and the court in City of San Jose deem "not well suited to the task." (Ibid.)
[11] Section 3510, subdivision (b) at one point read: "The enactment of this chapter shall not be construed as making the provisions of Section 923 of the Labor Code applicable to public employees. The holding of County Sanitation Dist. No. 2 v. Los Angeles County Employees' Assn. (1985) 38 Cal.3d 564 is hereby adopted and shall be applied for the purposes of this chapter." (Legis. Counsel's Dig., Sen. Bill No. 739, Stats. 1999 (1999-2000 Reg. Sess.) Summary Dig., p. 11.) The italicized language was subsequently deleted.
[12] We accordingly deny the County's request for judicial notice of portions of the PERB's annual reports from the years 2000-2001 to 2005-2006 documenting its actions with respect to injunctive relief requests.
[13] As we have concluded that the present case does not involve an unfair labor practice, this case arguably is not one "involving or growing out of a labor dispute." Fundamentally, injunctions issued in cases such as this arise out of a concern for public health and safety. The primary issue that the injunction is designed to remedy is the absence of essential workers, not the reason for their absence. Injunctions issued under County Sanitation have only a tangential relationship to the underlying labor dispute as the injunction itself has no direct effect on the ongoing labor negotiations or the employees' lawful exercise of their collective bargaining rights.